MARABLE *v.* STATE.

Opinion delivered November 21, 1927.

1. COUNTIES—FEES OF COUNTY CLERK.—Fees and emoluments of the county clerk are public funds, and it is his duty to report them to the county court and to pay into the county treasury all except the compensation allowed him by Acts 1915, c. 211.

2. COUNTIES—PAYMENT OF CLERK'S FEES INTO COUNTY TREASURY.—Constitution, art. 16, § 11, providing that no moneys arising from a tax levied for one purpose shall be used for another purpose, is not violated by requiring the county clerk to pay into the county treasury a portion of fees allowed him by the State, as well as a part allowed by the county for making out taxbooks.

3. COUNTIES—JURISDICTION TO SURCHARGE CLERK'S ACCOUNTS.—After two years and before the expiration of five years from the time of settlements by the county clerk with the county court under Acts 1907, p. 953, § 10, the chancery court is the proper forum in which to bring suits to surcharge the clerk's accounts and settlements with sums collected in excess of the compensation allowed him by Acts 1915, c. 211.

4. COUNTIES—PENDENCY OF APPEAL FROM VOID JUDGMENT.—Pendency of the county clerk's appeal to the circuit court from the county court's judgment readjusting his accounts and finding the amount

due the county from him, *held* not a bar to a suit in chancery court to readjust his quarterly settlements made more than two years previous; as the county court and the circuit court on appeal had no jurisdiction.

5. EVIDENCE—REPORT OF AUDIT OF CLERK'S BOOKS.—Under Crawford & Moses' Dig., § 664, the report of the auditor, appointed by the State Comptroller under § 661 to audit a county officer's books and accounts, is *prima facie* evidence of its contents.

6. EVIDENCE—REPORT OF AUDIT OF CLERK'S BOOKS.—Crawford & Moses' Dig., § 664, providing that the report of one appointed by the State Comptroller under § 661 to audit a county officer's books and accounts shall be accepted as evidence in any court or tribunal, does not violate any constitutional provision.

7. COUNTIES—REPORT OF AUDITOR AS EVIDENCE.—Persons appointed by the State Comptroller, under Crawford & Moses' Dig., § 661, to audit the county clerk's books and accounts as authorized by § 662, being required to give bond under § 663, and to make audit under their official oaths, a copy of their report filed and certified as required by § 664 would be evidence against the clerk and his sureties, though the successor of the auditor dying before the completion of the audit did not go over deceased's work in detail.

8. COUNTIES—IMPEACHMENT OF STATE AUDIT.—In a suit under Acts 1907, p. 953, § 10, to surcharge a county clerk's accounts and quarterly settlements for sums collected in excess of the compensation allowed him by Acts 1915, c. 211, his testimony that he made out the amount due for taxbooks in accordance with the custom of his predecessor would not impeach the report of the state auditorial department, based on examination of the taxbooks themselves, under Crawford & Moses' Dig., §§ 661-664.

9. COUNTIES—ACCOUNTING OF FEES BY CLERK.—The fact that part of the fees and emoluments allowed the county clerk for making out and extending taxes on the taxbooks is paid by the State does not relieve him from the responsibility of accounting for such part in his quarterly reports to the county court, under Acts 1907, p. 953, § 10.

Appeal from Columbia Chancery Court; *J. Y. Stevens,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

Two separate suits were brought by the State of Arkansas, for the use and benefit of Columbia County, to recover from John Marable, and the sureties on his bond as county clerk, sums alleged to have been collected by him under color of his office in excess of the compen-

sation allowed him by law and which have not been accounted for by him in his quarterly settlements with the county court. The first suit was to surcharge his accounts for the years 1921 and 1922, and the second suit was to surcharge his quarterly settlements for the years 1923 and 1924.

The cases were brought in chancery on the ground that the county clerk, in his quarterly settlements, had failed to charge himself with the full amount allowed him under the statutes, as county clerk, for extending the taxes on the taxbooks during the aforesaid years, and to account for other fees. There was an audit of his account by the Auditorial Department of State, in accordance with the provisions of the statute creating that department and prescribing its duties. Auditors, duly qualified and acting pursuant to statutory authority, were sent by the State Auditorial Department to Columbia County to make a detailed examination of the accounts of the county clerk for the years designated. These auditors made a complete and detailed examination of the accounts of said county clerk, and made a detailed report of their findings to the Auditorial Department. The principal items for which the county clerk had failed to charge himself were sums allowed him under the statute as county clerk for extending the taxes on the taxbooks during said years. The statement of accounts made by the Auditorial Department was full and complete, and showed exactly what fees were collected by the county clerk and what fees should have been collected by him during the aforesaid years. A copy of this report, duly certified to, was filed with the county clerk of Columbia County, and what was called the original of the report was filed with the circuit judge of the district in which Columbia County is situated.

The conclusions of law reached by us, and which will be stated in the opinion in this case, render it unnecessary to make a more detailed statement of the evidence in the case, because the findings of fact made by the chancellor were based upon the report of the Auditorial

Department, and the items embraced therein are not impeached by any evidence in the record. Hence no useful purpose could be served by setting out this report in detail or reviewing it in the same way.

A decree of the chancery court was entered of record, based on its findings of fact in the report of the State Auditorial Department, and to reverse that decree appellants have duly prosecuted this appeal.

*McKay & Smith* and *J. E. Hawkins*, for appellant.

*Walter L. Brown* and *Paul Crumpler*, for appellee.

HART, C. J. The compensation of the county and probate clerk of Columbia County was fixed by the Legislature of 1915 by act 211, which amends former acts relating to the same subject. Acts of 1915, p. 829. Section 2 of this act reads as follows:

"That, out of the fees and emoluments collected by him, the clerk of the county and probate court of Columbia County shall be entitled to have and receive as his salary the sum of one thousand eight hundred dollars per annum; provided said fees and emoluments amount to more than one thousand eight hundred dollars, he shall have and receive one-half of the fees and emoluments collected by him in excess of one thousand eight hundred dollars per annum."

The settlements of the county clerk are provided for in § 10 of act 377 of the Acts of 1907, which is found in Acts of 1907, page 951, and which reads as follows:

"The clerk of the circuit court and ex-officio recorder, the county and probate clerk, the sheriff, the collector of taxes, the assessor of taxes, and the treasurer of said county, shall charge and collect the same fees and commissions as are now or may be hereafter allowed them by law, and they shall each, by the fifth day of each quarterly term of the county court for Columbia County, held in January, April, July, October, of each year, file a sworn report showing the amount of all fees and commissions collected by them, respectively, up to and including the last day of the preceding quarter, and make settlement with said court by paying all amounts collected by

them during the preceding quarter in excess of the salary and fees herein allowed, into the county treasury, and file the treasurer's receipt therefor as a voucher in said settlement, and, in such settlement, said officers aforesaid shall each be chargeable with and liable for all fees and commissions that it was the duty of said officers to collect, whether the same was collected or not. Provided, a final settlement shall be made by each above named officer on the first day of November, 1910, and every two years thereafter, and shall include a tabulated statement of the entire term and an itemized statement for the month of October preceding such last settlement.''

Section 12 of the original act provides that the officers are required to keep a record of all fees and commissions earned and received by them from any source whatever, and that this record shall show the source from which such fees and commissions are received.

Section 13 makes it a penalty for the officers to fail to comply with the provisions and requirements of the act.

It is first earnestly insisted by counsel for appellant that the fees and emoluments received by the clerk are not received by him as money of the county, but are the amounts allowed him for his compensation, and that he does not owe the county anything until his compensation is first received by him. We do not agree with counsel in this contention. The county clerk is a public officer, and the fees and emoluments of his office are public funds. This will become apparent when all the sections of the statute in reference to his compensation and duties relating to the collection of fees are read and considered together. It will be noted that he is required to keep a record of all fees collected by him showing the origin and source of such collections. The evident design of the Legislature was to constitute all the money collected by the officers designated in the act public funds and to make such officers account for such funds. It will be observed that the officers are required to make quarterly settlements with the county court and to file a sworn report

showing the collection of all fees and commissions collected by them, and requiring them to pay into the county treasury all amounts collected by them in excess of the salary and fees allowed. We think the better view is to hold that the fees and emoluments of the various officers are public funds, and that it was the duty of the county clerk to make the reports required by the statute, and that it was his duty to pay into the county treasury all of the fees, except the compensation allowed him under the statute.

Under the holding of the chancery court, the county clerk was required to pay into the county treasury a portion of the fees allowed him by the county for making out the taxbooks and also that part allowed him by the State for making out the taxbooks. It is claimed that this course is in violation of art. 16, § 11, of the Constitution, which provides, in effect, that no moneys arising from a tax levied for one purpose shall be used for another purpose. We do not think that this provision of the Constitution would be violated by requiring the county clerk to pay into the county treasury any portion of the fees allowed for making out the taxbooks. His act in paying the money into the county treasury would end his responsibility in the matter, and he would not be concerned about any diversion of the funds. As we have already seen, the funds were public funds, and, after receiving his compensation, he was required to pay the balance of the fees and emoluments of office collected by him as county clerk into the county treasury, and he would be liable to the county for a failure to comply with the provisions of the statute.

It is next insisted that the chancery court was not the proper forum in which to bring the suit. We think this contention of counsel is settled against him by the decision in *Sims* v. *Craig,* 171 Ark. 492, 286 S. W. 867. Under the facts presented, the matters embraced in the present suit occurred after the expiration of two years and before the expiration of five years from the time of the various settlements made by the county clerk with the

county court. In the case just cited, the court expressly said that, after two years had expired for the county court to correct the officer's settlement, the chancery court could, within a period of five years from the date of the original settlement with the county court, surcharge and correct the accounts of the county treasurer for errors caused by inadvertence, accident or mistake.

In this connection it may be stated that the first of the two present suits was filed by the Attorney General in July, 1927. Prior to this time the county court had undertaken to adjust the settlements of John Marable as county clerk by reason of fraud and mistake alleged to have been practiced upon the county court in filing and securing confirmation of his quarterly reports. On the 28th day of December, 1925, the county court rendered judgment against Marable, readjusting his accounts and finding the amount due the county by him. Marable prosecuted an appeal to the circuit court from the judgment of the county court, and the appeal was pending at the time of the institution of the present suits by the Attorney General. It is earnestly insisted that the pendency of this appeal is a bar to the institution of the present suits in the chancery court. We do not think so. The proceeding in the chancery court to readjust the quarterly settlements of the county clerk was made more than two years after the quarterly settlements were made in the county court, and, under the decision in the Sims case, just cited, the chancery court would have jurisdiction to correct the settlements, instead of the county court. The presumption is that the circuit court will decide the case according to law, and it necessarily follows that the judgment of the county court will be reversed, because it lacked jurisdiction in the premises. Of course, if the appellant should not prosecute his appeal, the judgment of the county court would remain upon its records; but, the judgment being void for lack of jurisdiction, because the record shows on its face that more than two years had elapsed before the county court undertook to readjust the accounts, it could not injuriously affect the county

clerk. *Taylor* v. *Bay St. Francis Drainage Dist.*, 171 Ark. 285, 284 S. W. 770.

It is next insisted that the court erred in basing its finding against appellants upon the report of the State Auditorial Department. The Legislature of 1917 created the State Auditorial Department and prescribed its powers and duties. Crawford & Moses' Digest, chapter 14, § 661, provides that any county judge may call upon the State Auditorial Department for an audit of the books and accounts of the county officers. In such event it is provided that it shall be the duty of the State Comptroller to appoint one or more experienced auditors for the purpose of making such audit.

Section 662 provides that the Comptroller or any auditor appointed by him shall have the power to make a thorough examination into the affairs of any county officer, when called upon by the county judge of such county to do so. The section also provides that they shall have access to any reports, books, accounts, papers and documents concerning the office undergoing such an audit. The auditing officers are also authorized to examine, under oath, any officer, agent, clerk or other person touching the matters inquired into and examined, and to compel the attendance of any person in the State to testify under oath before him in relation to the affairs of such office or officers.

Section 663 provides for bonds to be furnished by such auditors.

Section 664 provides that the auditor making such audit shall make a full, detailed and certified report in triplicate and forward the same to the State Auditorial Department. A copy of the report is to be filed with the clerk of the county, and it shall be open to the inspection of the public, and the section expressly provides that, when certified by the custodian thereof, said report shall be taken and accepted as evidence in any court or tribunal.

Thus it will be seen that the report in question is made by the provisions of the statute evidence of the

facts recited in it. Such report is therefore *prima facie* evidence of its contents, and the statute making it evidence is not violative of any provision of our Constitution. The Supreme Court of Massachusetts, in a well-considered opinion, held that a statute of that State making the report of an auditor *prima facie* evidence upon such matters as were embraced in the order to him is constitutional. *Holmes* v. *Hunt,* 122 Mass. 505, 22 Am. Rep. 381.

It is contended, however, that the chancery court erred in receiving the report as evidence under the facts disclosed by the record. It is pointed out that two auditors were engaged in making the audit, and one of them died before the audit was completed. Another auditor was appointed in his place, and continued the examination of the records of the county clerk, but did not go over the early work of the former auditor in detail. Hence it is contended that the case is ruled by *Rouw* v. *Arts,* 174 Ark. 79, 294 S. W. 993. We do not agree with counsel on this point. In the case relied upon the audit was made by private accountants, and the proof of the correctness of it should have been made by the persons making the audit. In the case at bar the audit was made pursuant to the provisions of the statute, and the auditors acted in their official capacity in making it. They were required to give bond, and made the audit under the sanctity of their official oaths. Under these circumstances the statement of the accounts filed by them and certified according to law was a statement of all of them under their official oaths while in the performance of their official duties, and the copy filed in the office of the county clerk would be evidence, not only against him but his sureties. The chancery court could take the facts shown by the record, certified according to law, as the amount due by the clerk and his sureties, unless the accuracy of the items contained in the report was impeached by them. No serious offer was made by the county clerk to show that the items included in the report of the Auditorial Department were not correct. It is

true that he testified that he made out the amount due for taxbooks in accordance with the custom of his predecessors in office. Such testimony could not, in the nature of things, impeach the report of the Auditorial Department, which was based upon a detailed and accurate examination of the taxbooks themselves for the years in question. It is true that, under our statute, a part of the fees and emoluments allowed the county clerk in making out and extending the taxes on the taxbooks is paid by the State, but this did not relieve the county clerk from the responsibility of accounting for the part paid him by the State in his quarterly reports. The amount was not paid him in his private or individual capacity by the State as for services rendered it. By the terms of the statute, all the fees and emoluments of the office were public funds, and the officers embraced in the act were only allowed to retain a part of these funds for their salary and compensation, and they were expressly required to account for all the fees and emoluments and commissions received by them in their quarterly reports, and, after deducting the amount of their compensation, to deposit the balance in the county treasury. This the county clerk failed to do in the present case, and because the report of the State Auditorial Department was not impeached by evidence introduced in behalf of the county clerk, the chancery court was warranted in adopting it as a basis for its finding of facts in the case.

No useful purpose could be served by setting out in detail the items embraced in the report of the Auditorial Department or in discussing the various items in detail. It is sufficient to say that it contains items omitted from the quarterly settlements of the county clerk sufficient to warrant the chancellor in finding the amounts due by the county clerk to the county as set out in the decree of the chancery court.

The result of our views is that the decree of the chancery court was correct, and it will therefore be affirmed.