SKINNER & KENNEDY STATIONERY COMPANY *v.* CRAWFORD COUNTY.

4-3816

Opinion delivered April 29, 1935.

R. S. *Wilson*, for appellant.
*Finis F. Batchelor*, for appellee.

BUTLER, J. Skinner & Kennedy Stationery Company sold and delivered to Crawford County in the year 1931 record books and stationery which it is admitted were essential and necessary to the administration of the county government. These supplies were furnished from time to time during 1931, and, as delivered, claims

were filed in the county court. The first two claims were filed February 19, 1931, one in the sum of $50.19 and the other for $173.67. The last claim was filed on November 6, 1931, and on that date the total aggregate of claims amounted to $402.77. The total revenues of the county for county general purposes, at the time of the filing of these claims, had not been absorbed by allowances of claims for expenses of that fiscal year. The county court, however, did not act upon the claims of Skinner & Kennedy Stationery Company but did proceed to allow other claims to an amount which absorbed the revenue except the sum of $126.08 which was carried over into the revenues of 1932 and applied to the payment of outstanding warrants of previous years. The revenues for the fiscal year 1932 were paid out during that year for claims allowed for expenses occurring therein except a balance of $450, which, on the 2nd day of January, 1933, was paid out on valid outstanding warrants. In like manner the revenues for the year 1933 exceeded expenditures for that year in the sum of $1,184.87, which was thereafter expended in payment of valid warrants for prior indebtedness.

The claims of Skinner & Kennedy Stationery Company were suffered to remain on file during the years above mentioned with no action taken thereon by the county court. On January 22, 1934, when the revenues for the fiscal year 1934 had not been exhausted by expenditures, these claims were called to the attention of the county court and were then, by said court, disallowed, the court basing its action on the fact that the revenues for the year in which said claims were incurred had been exhausted by lawful expenditures and allowances for that specific year. On appeal to the circuit court, facts were found as above stated with the further finding that the material furnished by Skinner & Kennedy, while purchased during the year 1931, was for use in the year 1932. It was also found that delinquent real estate taxes assessed in 1930, to be collected in 1931, had been collected during the years 1932, 1933 and 1934, to the amount of $1,266.17.

The court found as a matter of law that the delinquent real estate taxes paid during the years 1932, 1933 and 1934, were revenues of the years in which they were paid and not of the year 1931, during which year such taxes first became due and payable. The court further declared the law to be that since the revenues for the year 1931 were exhausted before the order of disallowance of the Skinner & Kennedy claims was made, said claims were void and could not be paid out of the revenues for any subsequent year, and thereupon affirmed the judgment of the county court.

On appeal to this court, it is the contention of the appellant that because the materials in question were found to be such as were necessary to the administration of the business of the county, the claims therefor were valid statutory claims payable out of the surplus revenues of any fiscal year in which such surplus had accrued or might thereafter accrue, regardless of whether the revenues for that year had been exhausted. To sustain this contention, reliance is placed upon the decision of this court in the cases of *Polk County* v. *Mena Star Company,* 175 Ark. 76, 298 S. W. 1002, and *Miller* v. *State,* 176 Ark. 889, 1 S. W. (2d) 999.

In *Polk County* v. *Mena Star Co., supra,* the court noted the distinction between claims for expenditures necessary for the orderly administration of the affairs of the county which are imposed by statute,—such as the feeding of prisoners confined in the county jail, expense of holding courts of record, fees of justices of the peace, salaries of officers, making of assessments and tax books, etc.—and claims for permissible expenses which the county court may or may not authorize. The court called attention to § 1982 of Crawford & Moses' Digest providing for the making of appropriations, and then proceeded to state the duty of the quorum or levying court in the following language: "They should first make ample provision for those necessary expenses imposed on the counties by law, including outstanding warrants payable in that year, as, for instance, an installment due for construction of a courthouse; and, after having done this, they are at liberty to make appropriations of part or the

whole of the remainder of the revenue for the purposes provided by items 5, 6 and 7, but they cannot exceed the amount of the revenue for the fiscal year. If contracts are made or warrants issued in any year in excess of the revenue for that year, they are void." The question involved in that case was this: the Mena Star Company, a printing establishment, by order of the county board of election commissioners, had, in the year 1926, printed the election supplies for the general elections of that year in the amount of $114.60. The sheriff of the county had a claim for $19 for feeding county prisoners. These claims were disallowed by the county court. On appeal, it was found by the circuit court as a matter of fact that the revenues of the county for the year 1926 were in excess of expenditures for that year in approximately the sum of $5,000, and that the claims in question, which had been disallowed by the county court, were obligations of said county. The claims were not presented for allowance until April 15, 1927, at which time, and at the time of the hearing of the case on appeal, there was "sufficient revenue of the county for the year 1927 to pay said claims as well as all other legal obligations which had been incurred during the year 1926 in addition to the claims presented for allowance during the year 1927." Upon this state of facts the circuit court rendered judgment allowing both claims, which judgment on appeal was affirmed by this court.

In the case of *Stanfield* v. *Friddle*, 185 Ark. 873, 50 S. W. (2d) 237, the same contention was made as in the case at bar, and the case of *Polk County* v. *Mena Star Company, supra,* there, as here, was relied on as authority to support the contention. This court, by a unanimous opinion, rejected the interpretation sought to be placed on the Mena Star Company case and, in that connection, said: "It is said that certain fiscal officers of Logan County have interpreted the case of *Polk County* v. *Mena Star Co.,* 175 Ark. 76, 298 S. W. 1002, as authorizing an expenditure in excess of the revenue in certain cases. But we do not think the case is open to that construction. We must read that case in the light of the facts there stated. Polk County had not issued bonds

as the amendment authorized, and had an outstanding indebtedness at the time of the adoption of the amendment which had not been paid. Its annual expenditures were less than its annual revenues. The redemption of these outstanding warrants exhausted the county's cash, so that money was not available to redeem warrants issued in the then current year, yet we said that this fact did not affect the validity of such warrants, for the reason that their issuance did not increase the county's debt beyond what it was at the beginning of the fiscal year. In other words, a county might operate, although it could not do so on a cash basis. The inhibition of the amendment was, and is, that a county should not increase its indebtedness by appropriating and spending in any fiscal year any sum in excess of the revenues of that year. It was there contemplated that counties might not have the revenues to pay for all the expenditures which are required or allowed by law to be made, and for the guidance of fiscal officers we declared the priority in which contracts should be entered into and allowances made. * * * *

"Now this case did decide that those items designated as indispensable must first be paid before other items merely permissible under the law were paid. In other words, counties could not make allowances to cover the permissible items until they had first made allowances for the indispensable items essential to the support of the government. Having made allowances for the indispensable items, allowances could thereafter be made for the permissible items, provided the combined allowances did not exceed the revenues. Those allowances not in excess of revenue were valid; all others were void. * * * The point decided was that warrants were valid, although they could not be redeemed in the year of their issuance, because the redemption of valid warrants issued in the previous year had exhausted the county's cash. Such warrants were valid, notwithstanding the fact that they could not be redeemed in the year of their issuance, because their issuance was not in excess of the revenues of the county in the year in which they were issued."

It will therefore be seen that the Mena Star Company case, as interpreted by the Stanfield case, does not support the contention of the appellant in the case at bar, nor is that contention supported by the case of *Miller v. State, supra,* upon which appellant here relies. In that case it was held that, while a county cannot increase the amount of its existing indebtedness by incurring debts in excess of its current revenue, it is not an increase of indebtedness within Amendment No. 11 (10) where a county, which cannot redeem all outstanding indebtedness at the beginning of the fiscal year, issues warrants which cannot be redeemed through lack of funds, but which, when issued, are not in excess of indebtedness outstanding at the end of the prior fiscal year. It was further held that warrants issued in any year which did not exceed the revenues of the county for that year are redeemable in the ensuing year, though payment thereof makes it impossible to redeem warrants issued that year, and reference was made to the Mena Star Company case, *supra,* as authority for the conclusion reached. The court, referring to that case, said: ''There allowances were made by the county court in the year 1925 which did not equal the revenues of that year, but the redemption of valid outstanding warrants out of the revenues of that year made it impossible to redeem all the claims contracted and allowed that year. This was true also in the year 1926, so that there remained outstanding warrants which could not be redeemed. It was held that these facts did not prevent the county from contracting necessary obligations which could be paid only by the issuance of warrants which could not be redeemed out of the revenues of 1926, and that such obligations might be paid out of the revenues of a subsequent year. This was true because these last obligations, which were paid by warrants which could not be redeemed in the year of their issuance were not expenditures in excess of revenues. The county did not, in issuing those warrants which could not be redeemed in the year of their issuance, increase the county's indebtedness.''

The first clause of Amendment No. 10, which is applicable here, is as follows: ''The fiscal affairs of coun-

ties, cities and incorporated towns shall be conducted on a sound financial basis, and no county court or levying board or agent of any county shall make or authorize any contract or make any allowance for any purpose whatsoever in excess of the revenue from all sources for the fiscal year in which said contract or allowance is made; nor shall any county judge, county clerk, or any other county officer, sign or issue any scrip, warrant, or make any allowance in excess of the revenue from all sources for the current fiscal year." This amendment was first construed in the case of *Kirk* v. *High,* 169 Ark. 152, 273 S. W. 389. Lonoke County was attempting to erect a courthouse to be paid for in annual installments. The total installments, added to the other annual expenditures of the county, exceeded the total revenues for any one year. It was thought that the allowance of the annual claims would conflict with Amendment No. 10, *supra.* Because of the necessity of the case and the fact that the erection of the courthouse was essential and necessary for the orderly administration of the county government, this court placed a liberal construction upon the amendment, and held that it did not prohibit the building of county courthouses and jails, even though the cost of such buildings exceeded the yearly revenues. In that case Chief Justice McCulloch dissented, taking the view that the language of the amendment was so clear and explicit that no interpretation was needed and that expenses of county government, regardless of character, could not exceed the revenues for any one year. After this decision Amendment No. 17 was adopted and this court, in *Carter* v. *Cain,* 179 Ark. 79, 14 S. W. (2d) 250, said: "After the court had construed this Amendment No. 11 (10) to mean that a county could go in debt for courthouses and jails, the people then adopted Amendment No. 17 vesting the authority and right to construct courthouses and jails and to levy taxes to pay for them in the qualified electors of the county. Amendment No. 17 was evidently adopted for the very purpose of meeting the decision of this court and accomplishing what they thought was accomplished by Amendment No. 11 (10), when adopted. That is, to prevent counties from going in debt, and provide a

method for building and paying for courthouses and jails." Shortly afterward, this court, in *Luter* v. *Pulaski County Hospital Ass'n*, 182 Ark. 1099, 34 S. W. (2d) 770, referred to and quoted the above excerpt from *Carter* v. *Cain, supra*, and, following the quotation, said: "Amendment No. 8 (10) must now, since the adoption of Amendment No. 15 (17), be construed, as it reads, literally— that is, that contracts and allowances in any year cannot exceed the revenues of that year, not even for a purpose so necessary as that of building courthouses and jails." It will be observed that we are committed to a literal construction of the amendment.

In *Nelson* v. *Walker*, 170 Ark. 171, 279 S. W. 11, in commenting upon Amendment No. 10, the court said: "The language of the amendment is plain and peremptory. It requires that the fiscal affairs of counties, cities and incorporated towns shall be conducted on a sound financial basis, and provides that 'no county court, or levying board, or agent of any county, shall make or authorize any contract, or make any allowance for any purpose whatsoever in excess of the revenue from all sources for the fiscal year in which said contract or allowance is made; nor shall any county judge, county clerk or any other county officer, sign or issue any scrip, warrant, or make any allowance in excess of the revenue from all sources for the current fiscal year.' * * * In other words, the amendment leaves nothing to the discretion of the county judge in increasing the county's outstanding indebtedness. He has no power to do so. It must be conceded that this interpretation of the amendment makes it far-reaching and drastic, but it is so written in the amendment, and we cannot hesitate to declare the effect of its plain and unambiguous language. * * * If we should hold otherwise, the obvious purpose of the amendment would be defeated. It would only be necessary to first make the allowances for the expenses covering those things with which a county might dispense to the extent of all the revenue, or so much thereof as was necessary to pay them, and then make allowances to cover the claims where the compensation is definitely fixed by law. It must be quite obvious that if a county court can make allowances to

cover claims which may be paid for by a county, but which are not essential to the operation of the county's affairs, and, after doing so, may then make other allowances on the theory that indispensable services have not been paid for, the provision of the amendment that the county's indebtedness shall not be increased would have no binding effect on the county judge who wished to evade it.

"It requires no gift of prophecy to see that, if the plain and mandatory provisions of the amendment are given effect, injustice may be done persons who are entitled to compensation from the counties of the State, such as officers of the county, witnesses and jurors, etc. But it is the duty of the county judge to minimize the possibility of this injustice. He must take all these considerations into account before incurring obligations which a county may and should pay, and, in view of the drastic provisions of the amendment, he should allow a margin of safety. He must measure the county's possible or contingent expenses by the county's ability to pay, and in doing this, prudence would suggest the necessity of being able to take care of possible emergencies, such, for instance, as an unusually expensive criminal trial. If he fails to do this, persons who would otherwise be entitled to have claims against a county allowed may be deprived of their just compensation."

Since that case this court has had occasion frequently to consider Amendment No. 10 in cases which are cited in *Luter* v. *Pulaski County, etc., supra,* and in the recent case of *Pulaski County* v. *Board of Trustees, etc.,* 186 Ark. 61, 52 S. W. (2d) 972. In none of these cases, however, has the doctrine of *Nelson* v. *Walker, supra,* been impaired, but has been expressly referred to with approval in the case last cited. It appears therefore to be the settled doctrine that, without regard to the character of the expenses incurred, whenever the expenditures have equaled the revenues of a county in any given year, an allowance for any sum in excess thereof, whether it be for one of the necessary expenses of the county or for a permissive expense only, is void and any warrant issued upon said allowance is likewise void.

It may be said that an application of this rule may prevent the payment of just claims for services which county officers by law will be compelled to perform. This situation may well transpire if county courts are permitted to violate the plain provisions of the law. But we are not warranted in indulging the presumption that any county judge in the future will attempt to evade the provisions of the amendment or violate the law to which attention was called in *Polk County* v. *Mena Star Company, supra.* If, however, such should happen, the remedies for those aggrieved are ample, as has been pointed out in numerous decisions of this court.

At the time the claims in the instant case were filed, it appears that the revenues of the county for that year had not been exhausted, and they could have been allowed and paid without violating the provisions of the amendment. Had appellant been diligent, these claims would doubtless have been allowed and paid in full, but it allowed the claims to remain unacted upon until such time as the revenues of 1931 had been absorbed by other valid claims, except as to the sum of $126.08, and the court properly disallowed so much of appellant's claim as was in excess of that sum. It further appears that during the years 1932 and 1933 there was no increase of indebtedness, but that for each of these years the revenues exceeded the expenses.

Since there remained undisposed of the sum mentioned, and the revenues of the succeeding years were not absorbed by allowances for those years, an allowance of the appellant's claim in that amount would not offend against the amendment, for, as pointed out in the Mena Star Company case and the case of *Miller* v. *State, supra,* the effect of the allowance would not be to increase the indebtedness beyond what it was at the beginning of the fiscal year. That being true, and the claim being for necessary expense of county government, we see no reason why the allowance should not be made, the date of the allowance to be referable to the year in which the indebtedness was made.

The trial court was correct in holding that the taxes delinquent in 1931, but collected in subsequent years,

should be deemed to be revenues for the year in which they were collected. To hold otherwise would, as suggested by counsel for appellee, render it uncertain when the revenues for any particular year had been exhausted.

The case of *McGregor* v. *Miller*, 173 Ark. 459, 293 S. W. 30, involved a question relating to the validity of a warrant which, together with other allowances, exceeded the revenues of the county for the given year. It was ascertained that the warrant exceeded the revenues by the sum of $12.50, and so much thereof was declared void. It was held, however, that the warrant might be reissued in an amount which did not exceed the revenues for the year in which it was issued. This court approved the judgment of the trial court and held that the county court should reissue the warrant as ordered by the circuit court. So, in the case of *Polk County* v. *Mena Star Company, supra,* where the claim was not presented for allowance until after the year in which the demand against the county accrued, the court held that the allowance might be made and a warrant issued thereon because to do so would not increase the indebtedness of the county for the year in which the claim originated.

In the case of *Pulaski County* v. *Board of Trustees, supra,* the revenues of the years in which the claims arose, while not exhausted when the claims were filed, were afterward expended on allowances for expenses incurred in those years, so that afterward to allow the claims would effect an increase of the county's indebtedness for the years in which the claims originated. This distinguishes it from the case at bar, and renders it inapplicable to the instant case.

The judgment of the trial court is therefore reversed, and the cause remanded with instructions to allow appellant's claim in the sum remaining of the revenues for 1931 which was carried over into 1932.

JOHNSON, C. J., and McHANEY, J., concur.