PAGE *v.* McCUING.

4-6182                                                        148 S. W. 2d 308

Opinion delivered February 3, 1941.

*Jack Holt,* Attorney General; *J. F. Koone* and *T. H. Humphreys, Jr.,* Assistant Attorneys General, for appellant.

*W. A. Leach,* for appellee.

GRIFFIN SMITH, C. J. Appellee McCuing brought suit as a citizen and resident of Stuttgart and of School Dis-

trict No. 22 of Arkansas county.. He owns real and personal property within the city and school district on which taxes are paid for city and school. purposes.[1] It is contended legislative enactments authorize use to be made of moneys arising from such taxes in contravention of constitutional sanction, and therefore the acts are void to the extent that they permit the diversions complained of.[2]

In overruling a demurrer to the complaint, the trial court issued the order shown in the margin.[3] Plaintiffs and the defendant appealed.

Act 331, approved March 16, 1939, vests discretion in the state land commissioner to sell or donate tax-forfeited lots, tracts, or parcels of land lying beyond the corporate limits of cities or towns. However, until actual

---

[1] McCuing sued for himself and others similarly situated.

[2] As expressed in the brief, "It is the contention of appellees that all *ad valorem* taxes are, by the constitution, appropriated to the sole use and benefit of the taxing agencies empowered by the constitution to levy such taxes. That all tax-forfeited lands go to the state charged with the taxes levied by the various taxing agencies. That a sale by and a redemption from the state are but a delayed payment of taxes, which, when so paid, should be returned to the taxing agencies by which they were levied. That effect [of the statutes complained of] is to take from the counties, the cities, the towns, and the school districts, taxes authorized by the constitution to be levied by them for their sole use and benefit and to appropriate such taxes to purposes other than that for which they were levied."

[3] "It is decreed that the demurrer to the complaint be and the same is overruled, and the defendant, having declined to plead further, it is ordered that the defendant as treasurer of the state of Arkansas be and he is hereby restrained and enjoined from withdrawing or paying out of the state treasury any of the funds derived from the redemption and sale by the said state of any and all tax forfeited lands except the millage taxes levied for the state of Arkansas for its general purposes after there shall have been deducted therefrom the state's pro rata share of the expenses incident to the confirmation of the title to said tax-forfeited lands pursuant to the provisions of act 119 of the Acts of 1935 and the state's pro rata share of the appropriations hereinafter mentioned and referred to; except also any unexpended portion of the appropriation as made by acts 58, 370, and 363 of 1939; but nothing herein contained shall be so construed as to prevent the defendant from making distribution of the three mill school tax levied by the state as appropriated by the constitution of 1874.

"The court finds that a mandatory injunction directing the defendant treasurer to make distribution of the funds derived from the redemption and sale of tax forfeited lands as prayed by the plaintiff should not be issued at this time. It is, therefore, decreed that the complaint in so far as it seeks such mandatory injunction be and the same is hereby dismissed for the want of equity."

sale or donation, the right of redemption continues. Before the effective date of act 331 all lots, tracts, and parcels of land outside of cities and towns which had forfeited for the non-payment of taxes were subject to sale, redemption, or donation, and all city and town lots were subject to sale or redemption.

Section 3 of act 129, approved March 13, 1929, empowers the commissioner of state lands, highways, and improvements,[4] subsequent to January 1, 1930, to make private sale at $1 per acre of tax-forfeited acreage lands.[5] By § 4 all town and city lots and all lots, blocks, divisions and subdivisions that have been plotted and sold as such outside of the corporate limits [6] shall be subject to private sale by the commissioner for the taxes, penalties, and cost charged against them ''as appears in the certificate of the county clerk to such commissioner.''

Section 8 of act 129 (which does not appear in Pope's Digest) appropriates to the permanent school

[4] In respect of the office of commissioner of state lands, Pope's Digest (§ 8601) quotes from § 24, schedule, constitution of 1874, which provides: "The office of commissioner of state lands shall be continued, provided that the general assembly at its next session may abolish or continue the same in such manner as may be prescribed by law." A note to Pope's Digest, p. 2194, is: "The office of commissioner of state lands was created by act of July 15, 1868, under which he was appointed by the governor and held office for the term of four years. Under the present constitution he is elected by the qualified electors of the state for the term of two years. Sched. Const., § 3." Amendment No. 6 to our constitution received a majority vote in the election of 1914, and in *Combs* v. *Gray*, 170 Ark. 956, 281 S. W. 981, it was declared in force. The decision was handed down April 12, 1926. The amendment is: ". . . And the general assembly may provide by law for the establishment of the office of commissioner of state lands." Section 1 of act 65 of 1929 separates the state highway department from the department of "state lands, highways, and improvements," which was created by act 302 of 1913. There is this language in act 65: "Henceforth the office formerly known as the department of state lands, highways and improvements shall be known as 'commissioner of state lands.' "

[5] As payment, 50 per cent. of the price may be paid in scrip of the county in which the land is situated, "and the other 50 per cent. with state scrip, certificates of indebtedness, or lawful money of the United States." Pope's Digest, § 8631.

[6] This section appears as § 8632 of Pope's Digest. The first sentence of the act as published in the 1929 volume (which has been checked with the original bill and found to correspond) uses the language: "Sale of lots, blocks, divisions, and subdivisions *in or outside* of cities and towns." The succeeding language in § 4 does not include the words "in or," but reads "outside of the corporate limits."

fund half of the money realized from redemptions and directs that half be returned to the county in which the land lies. Section 11 of act 331 of 1939 directs that all sums received from the sale of tax-forfeited lands be credited to the state land fund and expended for the purposes enumerated, and if any amount remains after those purposes have been served, it shall be deposited to the credit of the permanent school fund.

By act 96, approved March 27, 1893,[7] the amount required to redeem any tax-forfeited lot, tract, or parcel of land, is a sum equal to the tax, penalty and cost for which it sold, together with penalties and costs and all expenses paid by the state in acquiring title, and all state and county taxes that would have subsequently accrued had the property remained on the tax books subject to taxation.

Certain acts of 1939, mentioned in the eighth footnote,[8] appropriate moneys received from the sale of tax-forfeited lands. Gravamen of appellants' complaint is that neither the counties, the cities, towns, nor school districts receive from the state any of the money paid the state where tax-forfeited lands are sold, while half of the amount received from redemptions is returned to the counties.

The question directly presented is: Do counties, cities, towns, and school districts have such an interest in unpaid tax assessments against real property that the state, in becoming purchaser at the collector's sale, ultimately takes title charged with the liens of the political subdivisions; or, expressed differently, are the liens vested rights inhering in the counties, cities, towns, and school districts?

---

[7] Pope's Digest, § 8673.

[8] Section 2 of act 58 appropriates $33,360 for each year of the 1939-41 biennium for support of the state land department. Act 337 makes $15,000 available to the commissioner of state lands for use in making refunds to purchasers of tax-forfeited lands in cases where title failed. Act 334 directs that the first $300,000 accruing to the land sale fund in each fiscal year (less operating costs of the department) be transferred to the school equalizing fund. Act 363 appropriates $25,847.10 for use of the claims commission. Act 370 appropriates $3,600 for each year of the biennium for the purpose of carrying out the provisions of act 125 of 1931—protection of state lands and timber.

Section 148 of the general revenue law of March 31, 1883,[9] directs that immediately after the expiration of two years allowed for redemption of land sold for taxes, the county clerk shall certify the state's purchases, "stating the amount of the taxes, penalty, and costs thereon, and cause the same to be recorded in the recorder's office in the county, *and thereupon the title to all lands embraced in such certificate shall vest in the state.*"

It seems, therefore, that the state's purchase is consummated in so far as acquirement of title is concerned when the clerk causes the certified list to be registered.

The general rule is that at a tax sale the state's lien and the purchase merge.[10] But, it is urged, there are other liens than that of the state, and since the assessments are in pursuance of constitutional authority, it is insisted that an act of the general assembly cannot have a divesting effect. This would undoubtedly be true if the lien were fixed by the constitution, as distinguished from legislative action.

Nowhere is power given the taxing units here involved to cause the object of taxation to be sold. The state must move; and it has promulgated forms of procedure which by express terms of applicable laws vest title.

It is our view that the state, in purchasing the property, takes it free of the liens which formerly attached. In other words, the state has not received moneys arising from a tax levied for one purpose and applied it to a different purpose. The reason is that the taxes were not paid, and therefore the money was not realized within the meaning of art. 16, § 11, of our constitution.

We find nothing in the constitution requiring the state to treat these tax liens as vested interests. On the contrary, while in a given case the amount required to redeem embraces the constituents of taxes, penalties, and costs, these items and ownership of the land have

---

[9] Pope's Digest, § 13, 876.

[10] *Armstrong Products Corporation* v. *Martin*, 119 W. Va. 50, 111 A. L. R. 1229, 119 S. E. 125.

merged, and the exaction is the result. In respect of lands sold or donated, as distinguished from redemptions, the price does not necessarily have relation to taxes originally assessed and charges subsequently accruing while the property is subject to redemption.

The decree is reversed with directions to dismiss the complaint.