TERRY, COUNTY JUDGE, *v.* THORNTON.

4-7531                                        183 S. W. 2d 787

Opinion delivered December 4, 1944.

*T. A. French* and *Kirsch & Cathey,* for appellant.

*E. G. Ward,* for appellee.

McFADDIN, J. The issues presented by this appeal are (1) whether the County Salary Act of Clay County effects an unlawful diversion of school funds; and (2) if so, can the funds so diverted be recovered.

Initiated Act No. 1 of Clay county was adopted at the general election of 1934. It is entitled "An Act to Fix the Salaries and Expenses of County Officials, and to Fix the Manner in Which Such Compensation and Salaries Shall be Paid, and to Reduce the Cost of County Government, and for Other Purposes." The act consists of 15 sections. Section 1 states that after January 1, 1935, the officials of Clay county shall receive only the compensation provided by the act. Sections 2 to 7, inclusive, fix the compensation, respectively, of county judge, circuit clerk, county clerk, sheriff and collector, assessor, and treasurer. Section 8 concerns payment of salaries. Section 9 provides that the officials shall charge and collect for the use and benefit of the county the same fees, costs and commissions fixed by law for such services, and said officials shall make regular reports to the county treasurer of all such collections. Sections 10 and 11 concern the duties of the officials as to the record of fees, costs and commissions earned. Section 12 concerns

purchases of supplies, etc. Section 13 here assailed as unconstitutional reads:

"After all salaries and expense claims have been paid as provided in this act, the surplus and savings resulting from the enactment of this law, if any, at the end of the fiscal year, shall be held by the county treasurer, and to be known and designated as a sinking fund, to be used only for the purpose of paying and retiring outstanding Clay county general warrants in the order of their date of issue, and after all outstanding Clay county general warrants are paid in full, then all remaining surplus or additions thereto, shall be transferred to the county general fund."

Section 14 declares that the various provisions and sections of the act are separable, and the unconstitutionality of any provision or section shall not invalidate the remainder of the act. Section 15 is the repeal of all conflicting laws.

From the effective date of the act until the filing of this suit in the chancery court, the surplus, each year, of fees, costs and commissions earned over the salaries due under the act, had been passed to the sinking fund and county general fund as provided in § 13 of the act. On November 27, 1943, appellees, as the members of the county board of education of Clay county, and also one appellee as a taxpayer, filed this suit in the chancery court against the county judge, treasurer, and sheriff of Clay county, alleging that from 1939 to and including 1943, a surplus of several thousand dollars of school funds (after paying the *pro rata* share of expenses) had been diverted from the school fund under § 13 of the act. The exhibits to the complaint gave the detailed figures. The complaint alleged that this transfer of the unexpended balance each year from the various school funds to the sinking fund and county general fund under § 13 of the act, was a diversion of school funds in violation of Art. 16, § 11, of the Constitution of Arkansas, and also of Amendment No. 11 to the Constitution.

The relief prayed was: (1) a decree enjoining future transfer, and (2) a judgment against the county general

fund for the amounts so alleged to have been diverted in the previous years, 1939 to 1942, inclusive. The controverted fund for 1943 was held by a temporary restraining order made shortly after the filing of the suit. On final hearing the chancery court held that payments in 1939 were diversions, but also held that recovery thereof was barred by limitations. As to all years subsequent to 1939, the court granted the plaintiffs (appellees) all of the relief prayed. The correctness of the decree is challenged in this appeal, presenting the questions herein discussed.

I. *Appellants contention is stated by them as follows: "There is no diversion of school funds in permitting an individual officer to collect out of school tax moneys his commissions for his services in handling the fund. Initiated Act No. 1 retains this recognized commission or fee basis as the standard of charge for the services rendered in collecting and handling the school funds. That part of the school funds which is deducted for the fees charged loses its identity as school tax money when it is collected by the officer. The fact that under the salary act a part of the fees may be taken from the officer and transferred to the county general fund does not constitute a diversion of school taxes. The case of* County Board of Education v. Austin, 169 Ark. 436, 276 S. W. 2, *is fundamentally unsound and should be overruled. The rule laid down by the Austin case has actually been disregarded in subsequent decisions of this court."*

Appellants thus make a direct attack on the decision in *Lonoke County* v. *Austin,* 169 Ark. 436, 276 S. W. 2, (which we will hereinafter refer to as the Austin case) and claim that the case has been so weakened by subsequent cases that it should now be overruled. The cases cited by the appellants as weakening the Austin case are: *Marable* v. *State,* 175 Ark. 589, 2 S. W. 2d 690; *Page* v. *McCuing,* 201 Ark. 890, 148 S. W. 2d 308; and *Howard* v. *Stafford,* 203 Ark. 736, 158 S. W. 2d 929. Appellants' contentions therefore necessitate (1) a review of the Austin case; and (2) a study of the cases said to weaken it.

The striking similarity of the case at bar to the Austin case may be demonstrated as follows:

(a) The same type of suit is filed here as in the Austin case.

(b) In the Austin case the county salaries were fixed by special act of the legislature passed prior to Amendment No. 14 to the Constitution. Here the salaries are fixed by initiated County Salary Act adopted under Amendment No. 7 to the Constitution.

(c) In the Austin case the money was paid from the fees, costs and commissions direct to the county general fund under § 17 of the act there involved. Here the unexpended balance of each such fund is ultimately transferred to the sinking fund and then to the county general fund under § 13 of the act here involved.

(d) In the Austin case it was shown that after the school fund had paid its *pro rata* part of the commissions, etc., there remained a balance to the credit of the school fund. Similar facts are alleged and shown here.

(e) In the Austin case it was alleged that to take the unexpended balance from the school fund would be a diversion in violation of Art. 16, § 11, of the Constitution, and also of Amendment No. 11 (there referred to as Amendment No. 9). The same allegations are contained in the case at bar.

With these points of similarity between the two cases, we further point out that in the Austin case it was held that the attempt to take the unexpended balance from the school fund was a diversion of school money contrary to the Constitution. There is no escape from the conclusion that the Austin case is ruling here; and with becoming candor appellants so admit, and ask that it be overruled.

The Austin case was decided in 1925, but the basic reasoning thereof is a quotation from *Gray* v. *Matheny*, decided in 1898, 66 Ark. 36, 48 S. W. 678, and quoted in the Austin case as follows (169 Ark. 436, 276 S. W. 6):

" 'He (the treasurer) receives fees or commissions on funds paid into the treasury derived from taxation. Section 11, Art. 16, of the Constitution of Arkansas provides: . . . "and no moneys arising from a tax levied for one purpose shall be used for any other purpose.'' Section 4 of the special act under consideration requires the officers to pay over in kind the funds received by them in excess of their salaries. We are of the opinion that § 7 of the act is obnoxious to the above provision of the Constitution, in so far as it requires the excess over the treasurer's salary of eight hundred dollars, to be covered into the general revenue fund of the county. The excess of funds in the hands of the treasurer over his salary belongs to the county, and goes to the respective funds for which the tax was levied and collected. . . .' "

Furthermore, in the Austin case, we said:

"The legislature is wholly without power to command that fees, emoluments and commissions allowed for the collection and handling of school funds by the county officers be covered into the county general fund. 24 R. C. L., p. 592, §§ 45-48. See, also, *Hartford* v. *West Hartford School Dist.*, 102 Ark. 261, 143 S. W. 895; *Cost* v. *Shenault*, 113 Ark. 19, 166 S. W. 740, Ann. Cas. 1916C, 483; *Dickinson* v. *Edmondson*, 120 Ark. 80, 178 S. W. 930, Ann. Cas. 1917C, 913. Such fees, emoluments and commissions, when paid into the treasury, should go to the credit of the school fund to be used for school purposes and no other. Section 17 is unconstitutional because it plainly authorizes a diversion of the school funds into the county general fund, where it could be used for other than school purposes.

"In the case of *Dickinson* v. *Edmonson*, *supra*, we quoted at page 89 from the Supreme Court of Washington in *School District No. 20 of Spokane County* v. *Bryan*, 51 Wash. 498, 99 Pac. 28, 20 L. R. A., N. S., 1033, as follows: 'To take from the one and give to the other by indirect methods that which was designed for a special purpose would defeat the whole scheme of the law, and open a way for the ultimate transposition of funds held

under a most sacred trust. Courts have been zealous in protecting the money set apart for the maintenance of the free schools of the county. They have turned a deaf ear to every enticement, and frowned upon every attempt, however subtle, to evade the Constitution.' The above language is exceedingly apposite here. 'Constitutional requirements as to the preservation and inviolability of the public school funds must be observed by state legislatures, or their enactments will be invalid.' 35 Cyc., p. 826. Certainly the school funds should not be made to bear more than its just proportion of the salaries of the collector and treasurer.''

In the Austin case we were considering the constitutionality of an act of the legislature claimed to be a diversion of school funds. Here we are considering an initiated county salary act. But this difference in the form of the legislation is immaterial. The same constitutional provision that prevented the legislature from diverting the trust funds of schools applies with equal force to the attempt of a county salary act to do the same thing. In the case at bar, one of the declared purposes of the county salary act is to reduce the cost of county government. The saving is to be accomplished through economy, but not through diversion. The act cannot create a surplus in the county general fund at the expense of school funds, which are, in themselves, trust funds. What is saved the school funds through the reduction in the salary of county officials cannot, by the process here sought to be applied, be appropriated for county obligations, but can only be expended for school purposes. As has been shown, the school fund is a trust fund, and as long as it retains this character it is subject to recovery.

The excellent briefs and earnestness of counsel for appellants in this case (and also in the case of *Independence County* v. *Thompson,* No. 7462, presenting the same questions, and this day decided,) have caused us to incorporate in this opinion a thorough review of the Austin case in response to the request that it should be overruled. We have concluded that the Austin case should not be overruled. We now reaffirm it. Without present-

ing an essay on *stare decisis,* or commenting on how other courts may overrule time-honored decisions, and without reviewing in greater detail the cases cited and discussed in the Austin case, it is sufficient to say that we adhere to it.

Neither do we believe that the cases, which appellants cite as weakening the Austin case, accomplish such a result as claimed. We have listed these cases heretofore; we now briefly discuss them:

(a) *Marable* v. *State,* 175 Ark. 589, 2 S. W. 2d 690, is cited. In the Marable case the county clerk was on a salary, but all fees and emoluments were to be collected by him and reported to the county treasurer. The county clerk received fees from the state for making the tax books, and he failed to report and remit these fees. When asked for the same, the county clerk replied that he received the money from the *state,* and for him to remit it to the county treasurer would be a diversion of state money to the county general fund. This court, in refusing to allow the county clerk to profit personally by any such defense, said:

"We do not think that this provision of the Constitution would be violated by requiring the county clerk to pay into the county treasury any portion of the fees allowed for making out the tax books. His act in paying the money into the county treasury would end his responsibility in the matter, and he would not be concerned about any diversion of the funds."

It is evident that in the Marable case this court was refusing to allow an official to profit by claiming such defense. The official did not offer to return to the state the funds he received for making the tax books; he sought to keep the funds himself. The Marable case does not weaken the Austin case.

(b) *Page* v. *McCuing,* 201 Ark. 890, 146 S. W. 2d 308, is cited. The Page case held that the proceeds received by the state for the sale of tax-forfeited lands need not be delivered back to the counties and school districts in the proportion that the taxes of each such agency were

levied originally on the particular land. The opinion states the reasons for such holding, in these words:

"It is our view that the state, in purchasing the property, takes it free of the liens which formerly attached. In other words, the state has not received moneys arising from a tax levied for one purpose and applied it to a different purpose. The reason is that the taxes were not paid, and therefore the money was not realized within the meaning of Art. 16, § 11, of our Constitution."

Thus, the Page case, while not citing the Austin case, specifically shows the distinction between the two cases, and is in no sense a weakening of the Austin case.

(c) *Howard* v. *Stafford,* 203 Ark. 736, 158 S. W. 2d 929, is cited. The Howard case held that the Act No. 78 of 1941 (providing that county treasurers should be allowed as fees 2 per cent. on certain funds coming into their hands) did not repeal any county salary act or other law whereby county treasurers were on a salary; and that Act 78 meant that the treasurer's office could claim the 2 per cent. which would go to the treasurer if his salary was not otherwise fixed by law. The opinion said:

"There is no provision in the act that intimates that all such fees accruing to the office shall be paid to the treasurers as salary or other compensation. We think what the legislature intended to do was to create a source of revenue accruing to such office from which the salary of the incumbent could be paid."

If the treasurer's office did not receive the salary, certainly no other person nor fund could claim it. So the Howard case in no sense weakens the Austin case.

We, therefore, adhere in all things to the ruling in the Austin case.

II. *Appellants next contend that § 11579 of Pope's Digest is unconstitutional.* This argument was evidently placed in the brief with the idea in mind that if this court should overrule the Austin case, this § 11579 of Pope's Digest could not be used to sustain the lower court. Having decided to adhere to the Austin case, it becomes

unnecessary for us to consider § 11579 of Pope's Digest; so we pretermit any discussion of this section.

III. *Appellants express their next contention in this language: "Appellees cannot question the constitutionality of Initiated Act No. 1 of Clay county. The funds which appellees claim exist only by reason of Initiated Act No. 1 which preserves the statutory fees but provides that the excess over the salaries and expenses of the county collector and county treasurer shall become a part of the county general fund. The appellees cannot rely upon Act No. 1 to create the funds claimed accruing from fees which would otherwise go to the officers individually and at the same time attack the constitutionality of the act, thereby defeating the express intent of the electors."*

The answers to this contention are (1) that the appellees are not attacking the entire Initiated Act No. 1, but are attacking only that part of the act that constitutes a diversion of school funds; and (2) that the tax is not levied by the salary act, but by the means fixed by the Constitution, *i.e.*, the quorum or levying court on vote of the electors in the school districts. The general rule is that the acceptance of benefits under a statute generally precludes an attack on the statute; but that rule has numerous exceptions, one of which is that where the provisions of the statute are separable, attack may be made on a separate part claimed to be unconstitutional. Section 14 of the county salary act here involved provides for separability. The rule of separability may be invoked even in the absence of such a section, if a workable act remains with the invalid portions stricken. We conclude that with so much of § 13 of the Clay County Salary Act as affects school funds, stricken as violative of Art. 16, § 11, of the Constitution, the remaining parts make a workable act.

In 11 Am. Juris. 770, *et seq.*, many instances are listed showing the exceptions to the general rule that the acceptance of benefits under a statute precludes an attack; and in 16 C. J. S. 195 it is stated::

"The fact that a taxpayer, by his acts or omissions, might be precluded from attacking a statute will not pre-

clude him from attacking a tax under another statute, or an independent and separable provision of the same statute.''

The appellees are seeking to prevent a diversion of school funds, and as citizens and taxpayers they have this right. See *Samples* v. *Grady, ante,* p. 724, 182 S. W. 2d 875.

We therefore hold against the appellants' contention on this point.

IV. *Recovery for years prior to 1943. The appellants say: ''Even if this court should follow the Austin case, no judgment can be rendered in this cause for sums transferred to the county general fund for 1942 or prior years. The county court has exclusive jurisdiction of claims against Clay county, which is not even a party to this suit. The maximum relief which appellees can have here is injunctive relief as to the future and the apportionment of the excess fees for the year 1943 which have been impounded in this suit. The excess fees transferred to the county general fund have long since been spent by the county. Appellees cannot now compel the repayment of these sums out of current county revenues. Amendment No. 10 prohibits any recovery in this case except as to funds actually impounded herein.''*

Without considering the fact that Clay county is not a party to this suit, we uphold the appellants' contention because of Amendment No. 10 to the Arkansas Constitution, and our holdings involving that amendment. It was shown in this case the county general fund was exhausted for each of the years of 1940, 1941 and 1942. The diversion in 1943 was prevented by a temporary restraining order. The appellees have no right to claim moneys accruing to the county general fund in 1944 and subsequent years for the diverted funds of 1940, 1941 and 1942. The reason for this holding is expressed in the following cases: *Crawford County* v. *Maxey,* 196 Ark. 361, 118 S. W. 2d 257; *Cook* v. *Shackleford,* 192 Ark. 44, 90 S. W. 2d 216; *Skinner & Kennedy Stationery Company* v. *Crawford County,* 190 Ark. 883, 82 S. W. 2d 22; *McGregor* v. *Miller,* 173 Ark. 459, 293 S. W. 30.

One of the purposes of Amendment No. 10 to the Arkansas Constitution was to keep counties from paying claims of previous years out of current funds, where such payments would be in excess of the revenues collected for the year in which the expenses were incurred. The failure of any citizen or taxpayer to take steps to restrain the diversion of the school funds in 1940, 1941 and 1942 resulted in the loss of the money from the school funds to the county general fund. The money has long since been expended and cannot be traced because the county general revenues were depleted at the end of each of the years. To allow the appellees now to recover back the money from the county general fund would be to allow the diversion of tax money collected for the county general fund to the school fund, for which fund it was never levied.

To summarize and conclude, we hold:

(1) That § 13 of the Clay County Salary Act is unconstitutional in so far as any attempted transfer of school funds is concerned.

(2) All of the decrees of the chancery court in this cause is affirmed, except that part which reads:

". . . that the plaintiffs do have and recover of and from the Clay county general fund of Clay county, Arkansas, the sum of $5,044.08, the same being the amount of school funds diverted to the Clay county general fund in excess of the salary and office expenses of said treasurer and collector respectively for the years 1940, 1941 and 1942 from the school funds collected and received by said officers.

"The court further finds that the defendants should pay all costs herein out of the Clay county general fund, and that the plaintiffs may have such process as may be authorized by law for the collection of said judgment."

The quoted part of the decree is reversed and stricken; and, as so modified, the remaining portion of the decree is in all things affirmed. The costs of the lower

court and of this court are to be paid one-half by appellants and one-half by appellees.