NATIONAL SURETY CORPORATION *v.* BILLINGSLEY.

4-6976                                    168 S. W. 2d 427

Opinion delivered February 15, 1943.

294

*Barber, Henry & Thurman* and *Van P. Johnson,* for appellant.

*Leffel Gentry,* for appellee.

ROBINS, J. The appellee, W. E. Billingsley, a taxpayer suing for the use and benefit of Izard county, in his complaint filed in the circuit court charged that the appellant, R. G. Miller, as county treasurer, in obedience to a void order of the county court, had unlawfully transferred from the courthouse bond fund, a fund arising from taxes voted to pay principal and interest of bonds issued for the purpose of building a new courthouse, to the building fund the sum of $2,500, which was used for the completion of the county courthouse, and that D. O. Johnson, now deceased, while collector, had paid over the sum of $2,000, collected by him as taxes and belonging to the courthouse bond fund, to the courthouse building commissioners, and that the appellant, Van P. Johnson, successor of D. O. Johnson as collector, had paid over to the said commissioners the sum of $250 collected by him as taxes and belonging to the courthouse bond fund; and that the appellant, National Surety Corporation, as surety on the official bonds of the said treasurer and collectors, was liable to the county in the total sum of $4,750 to cover the amount of the funds said to have been illegally diverted. The appellants in their answers denied the right of the appellee to bring the suit, and set up as defenses that the courthouse was constructed under an agreement with the National Youth Administration by which the National Youth Administration was to furnish approximately $40,000 in labor and material, and the county was to furnish cash in the sum of $30,000, to be raised by a bond issue duly authorized by the voters of the county; that after the bonds were sold and construction of the courthouse begun the funds derived from the sale of the bonds were exhausted and the National Youth Administration threatened to withdraw aid from the project unless additional funds were made immediately available, and that, an emergency being caused by reason of the fact that the courthouse was not ready for occupancy and that the county officers and agencies were housed in inflammable wooden structures,

the county court made an order directing that the surplus of $2,500 then on hand in the bond fund, after paying current interest on the bond maturities, be transferred to the building fund, and that thereafter this sum was duly paid out on warrants drawn on said fund by order of the county court to pay for labor and material used in the new courthouse; that D. O. Johnson, deceased, as collector, made advances, used for the same purpose, totaling $2,000, to the building commissioners, and that his settlement showing these advances was approved by the county court; that appellant, Van P. Johnson, had paid to the building commissioners $250 out of the taxes collected by him for the bond fund, and that this payment had been shown in his settlement, which was duly approved by order of the county court; that the county had sold additional bonds in the sum of $10,000 for completion of the courthouse, and that the proceeds thereof had been placed in the hands of the county treasurer, and, at the time of the filing of the suit, there was the sum of $6,742 still remaining in this fund

After the filing of the suit by the appellee, Billingsley, (which was transferred to equity) the appellants, Miller, Van P. Johnson for himself and as administrator of the estate of D. O. Johnson, deceased, and National Surety Corporation, filed suit in the chancery court against the appellee, Billingsley, as county judge, and appellee, Dale Estes, county treasurer, in which the facts as to the diversion of the funds as alleged in their answers were set forth, and alleging that, in equity and good conscience, if it should be held that the transfers and payments from the bond retirement fund complained of in the original suit, were unlawful so as to impose liability therefor, they would be entitled to a mandatory injunction requiring the treasurer to reimburse the bond fund account out of the moneys now in the courthouse building fund account. On this complaint of appellants, a temporary injunction was issued restraining the county judge and the county treasurer from paying out any funds from the courthouse build-

ing fund that would deplete it below the sum of $4,750.
The two cases were consolidated for trial.

The lower court found that the appellants, in trans-
ferring the money from the bond fund account to the
courthouse building fund account, acted in good faith
and were prompted by a desire to complete the court-
house without delay, thereby preventing the possible
loss of National Youth Administration labor; that there
was no intentional fraud on the part of any of the appel-
lants in making the transfers, but that the said bond
fund was derived from taxes that could be used only in
payment of the bond maturities and interest; that, at
the time said transfers were made, most of the indebted-
ness was unpaid, although there was a surplus in the
bond fund account not needed at the time to meet cur-
rent obligations, and that this surplus could not be used
for any purpose other than to retire the bonds; and a
decree was rendered by the court in favor of the appel-
lee, Billingsley, for the use and benefit of the county,
against Miller and National Surety Corporation for the
sum of $2,500, and against Van P. Johnson, as admin-
istrator of the D. O. Johnson estate, and National
Surety Corporation for $2,000, and against Van P. John-
son and National Surety Corporation for $250. The
lower court refused to grant the relief as to the re-
transfer of the sum of $4,750 from the building fund to
the bond retirement fund as prayed for by appellants
in their complaint. After appealing from the decree of
the lower court, the appellants asked and were granted
by this court a temporary injunction restraining the
appellee, Billingsley, as county judge, and appellee,
Estes, as county treasurer, from depleting the court-
house building fund then on hand below the sum of
$4,750.

There is no dispute about the facts in this case. It
appears from the record that funds aggregating $4,750
were improperly diverted from the bond retirement
fund to the building fund; that these funds were actually
used to pay for labor and material in the completion of
the courthouse, and that after the courthouse had been
completed and furnished there was $6,742 still remain-

ing in the building fund. In the case of *In Protest of Bledsoe,* 161 Okla. 227, 17 P. 2d 979, the supreme court of Oklahoma said: "If an amount of money is illegally transferred from one fund to another, the amount of cash on hand in the second fund, not exceeding the amount illegally transferred thereto, may be considered by the excise board as in the fund from which the illegal transfer was made for the purpose of restoring, as far as possible, to the first fund the amount that belonged in it." This rule should be applied in the case at bar. The building fund was augmented by the addition of $4,750 improperly taken from the bond retirement fund, and, if this money had not been so diverted, there would now be in the building fund $4,750 less than there is at the present time. The county, under the undisputed evidence, has obtained the full benefit of the expenditure of this $4,750, and, while courts should be zealous to protect, as far as possible, the taxpayers from loss occasioned by the improper diversion of public funds by officials, justice and equity do not require that the public should actually profit by any such illegal acts. If the fund into which the illegal payments were made had been exhaused an entirely different situation would be here presented; but, as shown by the record, enough money still remains in this fund to replace the moneys taken out of the bond retirement fund without working any injury to the taxpayers, to the holders of the county's bonds, or to the officials who made the expenditures in good faith, but in an unauthorized manner. By effecting this restoration, equity would be done to all interests concerned. The decree of the lower court is accordingly reversed and decree will be entered here directing that the appellee, Dale Estes, as treasurer of Izard county, transfer from the courthouse building fund to the courthouse bond retirement fund of that county the sum of $4,750; the costs of the lower court to be assessed against the appellants, and the costs of this court to be assessed against the appellees.