DERMOTT SPECIAL SCHOOL DISTRICT ET AL v. MAX BROWN, INDIVIDUALLY AND AS SHERIFF AND COLLECTOR OF CHICOT COUNTY

5-5910      485 S.W. 2d 204

Opinion delivered July 17, 1972
[Opinion on Rehearing delivered October 9, 1972.]

*Warren & Bullion*, for appellants.

*Drew & Rebsamen,* for appellee.

J. FRED JONES, Justice. Four school districts in Chicot County and nine citizens and taxpayers of that county, hereafter referred to as appellants, instituted the present action in the Chicot County Chancery Court against Max Brown individually and as sheriff and collector of Chicot County, hereafter referred to as sheriff, seeking injunctive relief for unlawfully diverting school monies to other purposes, and to recover judgment against him for monies diverted and lost to the school districts for the years 1967 and 1968. The chancellor restrained and enjoined the sheriff from using the statutory commissions charged for the collection of school taxes to pay the expenses of the office of sheriff, but refused to enter judgment against the sheriff for any sums so used. On appeal to this court the appellants designated five points upon which they rely for reversal, but they are all covered by the appellants' fourth point as follows:

"The lower court erred in refusing to grant a money judgment."

The sheriff has cross-appealed contending that the chancellor erred in restraining and enjoining him from using the statutory commissions charged for the collection of school taxes less only the actual separate expenses in collecting taxes and pro rata salary of the sheriff. The sheriff argues in support of his cross-appeal that the offices of sheriff and collector are two separate offices, the duties of which are combined under one elective officer (the sheriff) and that if the separate duties are to be performed by the sheriff without co-mingling the fees collected in the performance of the combined duties, and if the salaries and expenses of general operation of the two officers are to be separated and charged separately to the duties performed in the separate offices as decreed by the chancellor, the net result would be a separation of the office of sheriff from the office of collector in violation of Art. 7, § 46 of the Constitution.

The facts of this case appear as follows: The sheriff and collector of Chicot County, as well as many other

counties in the state of Arkansas, is still on a fee basis, and the two offices of sheriff and ex-officio collector are still combined under Art. 7, § 46 of the Constitution which provides:

> "The qualified electors of each county shall elect one sheriff, who shall be ex-officio collector of taxes, unless otherwise provided by law. . ."

The salary of the sheriff of Chicot County is limited to $5,000 per year by Art. 19, § 23 which is as follows:

> "No officer of this State, nor any county, city or town, shall receive, directly or indirectly, for salary, fees and perquisites more than five thousand dollars net profits per annum in par funds, and any and all sums in excess of this amount shall be paid into the State, county, city or town treasury as shall hereafter be directed by appropriate legislation."

The fees from which the sheriff's salary is to be paid have been changed from time to time by statutory amendment and by Act No. 32 of the Acts of 1957, now appearing as Ark. Stat. Ann. § 12-1722 (Repl. 1968), as follows:

> "The sheriffs of the several counties of the State of Arkansas shall be allowed fees as follows:
>
> For serving every capias, simmons scire facias or attachment for each defendant and garnishee—$2.00. . ."

Then follows the numerous duties for which the sheriff is to receive separately designated fees. The fees payable to the collector of revenue have also been amended from time to time by the legislature and Ark. Stat. Ann. § 12-1726 (Repl. 1968) provides as follows:

> "Said Collector shall be allowed commissions for collecting the revenue in the year 1949 and thereafter as follows:

For the first Ten Thousand Dollars [$10,000] collected
5 per cent in kind; for all sums over Ten Thousand
Dollars [$10,000] and under Twenty Thousand Dol-
lars [$20,000] collected 4 1/2 per cent in kind; for all
sums over Twenty Thousand Dollars [$20,000] col-
lected, 4 per cent in kind; provided, however, that in
counties whose population is not less that 8,597
and not more than 8,610, according to the last Federal
census, said Collector shall be allowed a commission
of five per cent [5%] upon all funds collected by him.
*Provided that the increased Commission herein pro-
vided shall not apply to taxes levied for school pur-
poses.*" (Emphasis added).

Ark. Stat. Ann. § 84-901 (Repl. 1960) provides as
follows:

"The sheriff of each county shall be ex-officio collec-
tor of all taxes of his county until otherwise pro-
vided, and after giving bond as hereinafter prescribed
in this act, and upon receiving the tax books of his
county, he shall proceed to collect the same according
to law.

Each collector may appoint one or more deputies to
assist him in the collection of taxes, and shall take
such bond and security from the person appointed
as he deems necessary for his indemnity, and shall
in all cases be liable for the proceedings and mis-
conduct of his deputies."

Ark. Stat. Ann. § 84-933 (Repl. 1960) provides for the
kind and manner of records to be kept by the tax collector,
and § 84-936 authorizes the director of local audits to re-
quire tax collectors to keep any and all tax money collected
in a separate account from all other money coming into
their possession, and provides that no collector shall be
authorized to check on such account except in favor of a
treasurer or depository to whom he is required to pay
such money, or to himself for commission or salary al-
ready earned. This section then provides for the prepara-
tion of the tax collector's report for the purpose of audit

and approval and provides for final settlement with the state.

Ark. Stat. Ann. § 84-1401 (Repl. 1960) provides as follows:

"The County and Probate Clerk, Circuit Clerk, Constables, Sheriff and Collector of each County in the State of Arkansas are required to pay over to the County Treasurer of each County on the first and fifteenth of each month and within two [2] days thereafter all funds in each of their hands belonging to said County or its subdivision that is by law required to be paid into the County treasury, whether taxes, fines or any moneys that are collected for any purpose by law and belonging to said county; providing further that the collector shall pay to the state treasurer all moneys belonging to the State of Arkansas on the days above mentioned.

This section does not mean that the Collector shall make a distribution of taxes to all funds, but that he shall settle with the County Treasurer in a lump sum and the County Treasurer shall credit the same to the Colllctor's unapportioned account. Provided, further, that upon a certificate of the County Clerk the County Treasurer will transfer to the various funds ninety per cent [90%] of the advance payments made by the Collector from time to time during the collecting period and upon final settlement the proper adjustments will be made with the various accounts and the balance remaining in the unapportioned account will be distributed upon order of the County Court approving the final settlement of the Collector."

Now turning for a moment to the levying of taxes, Art. 16, § 11 of the Constitution provides.

"No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same; and no moneys arising from a tax levied for one purpose shall be used for any other purpose."

Ark. Stat. Ann. § 80-602 (Repl. 1960) provides for the levying of tax for school purposes and Ark. Stat. Ann. § 80-603 (Repl. 1960) provides as follows:

"Rates voted for different funds of district school tax shall not be shown separately on the county tax books, but shall be shown there only in the total amount of district tax to be levied. Such school tax shall be collected in the same manner as county taxes are collected, at the same time and by the same person, and be paid into the county treasury. The county treasurer shall separate the proceeds of such taxes into the several funds as is provided by law, or by the county board of education as has been stated, or the school directors as is authorized by law."

Article 14, § 2, of the Constitution provides:

"No money or property belonging to the public school fund, or to this State for the benefit of schools or universities, shall ever be used for any other than for the respective purposes to which it belongs."

Amendment No. 40 to Amendment No. 11 of Art. 14, § 3, of the Constitution removes the 18 mills limitation on the levying of taxes for school purposes and also ends with the following:

"Provided, that no such tax shall be appropriated for any other purpose nor to any other district than that for which it is levied."

The facts as evidenced by the record in this particular case are to the effect that the sheriff and ex-officio collector of Chicot County deducted his salary of $5,000 and the expenses of both the offices of sheriff and tax collector from the statutory fees allowable for the services pertaining to both offices, and settled his account with the county treasurer after deducting his salary and expenses of both

offices. The conclusion we reach in this case does not justify an attempt by this court to itemize, segregate and pro rate the fees and expenses involved in Chicot County. It is apparent from the record that the sheriff's statutory fees derived from the performance of his duties as sheriff amounted to far less than his salary as sheriff and the actual expenses properly chargeable to the duties of his office as sheriff; whereas his statutory fees on the funds derived from tax collections appear to be considerably more that the actual cost properly chargeable to tax collections, so the sheriff simply paid the expenses of both offices from the fees allowable from both sources and paid the balance of his collections to the county treasurer as required by statute.

It is obvious from the above constitutional amendments and amendments to amendments, as well as the above statutes relating to the sheriff's office, the collector's office, and taxation for various purposes, that the sheriffs and ex-officio collectors serving under a fee system are doing so under very difficult conditions. The crux of the complaint in this case is that the sheriff has used some of the tax funds levied for the benefit and maintenance of schools to defray the expenses of the sheriff's office in carrying out the duties of that office in the area of law enforcement as well as to defray the expenses of the sheriff as ex-officio tax collector in carrying out his duties in the collection of taxes, and as a result the schools have paid more than their pro rata share of the expense of law enforcement and more than their pro rata share of the expense of all tax collections.

The record is silent as to the school millage voted by the appellant school districts in this case, but it is apparent from the above statutory and constitutional provisions as well as from common knowledge, that the sheriff and collector of Chicot County collects taxes levied for various purposes upon which he is entitled to the statutory fee for his services as collector. The appellants alleged in their complaint that the four school districts are due the approximate amount of $25,752 in school funds diverted to the

maintenance of office of sheriff and diverted from school funds for that purpose and in stating their contention in their complaint on this point, they state the problem and their suggested solution as follows:

"The Defendant has transacted a large volume of business and the amount and description of the different items of fees are derived from numerous and different sources, and the expenditures are numerous and varied which renders the account so difficult and intricate that Plaintiffs are unable to allege with certainty the actual amount due the Plaintiffs, but it is believed and therefore alleged that the amount is approximately $25,752.00 as hereinafter set out:

| | |
|---|---|
| Dermott Special School District | $ 4,840.89 |
| Lakeside School District No. 1 | 8,715.95 |
| Euroda Special School District | 10,224.48 |
| Chicot County School District | 1,605.82 |

The account is so voluminous and complicated that only a Court of Equity in an action for accounting can render justice to the parties herein and decide the issues presented. Plaintiffs remedy at law is inadequate."

No fraud is alleged or proven in this case and no one questions the propriety, legality or necessity of the fees collected and expenses paid out by the sheriff, the only question pertains to the funds from which the amounts have been paid. It appears from the record that the citizens of Chicot County as well as the school districts have received full benefit for the money spent by the sheriff in maintaining law and order, as well as in collecting taxes through the sheriff's office in Chicot County; but, the school districts argue that they have paid more than their proportionate share of the cost from taxes levied for their use and benefit under a constitutional prohibition against their use for any other purpose. The same argument, of course, could be made in connection with the collection of any other of the taxes collected by the sheriff in which a millage has been voted or assessed under state

law for a specific purpose, but be that as it may, as the Constitution now stands the sheriff was in error in applying the fees allowed him on tax collections to the expenses of the sheriff's office and in not charging the school districts involved in this case only their pro rata share of the cost and expense of collecting the school and other taxes. We conclude, therefore, that the chancellor was correct in so holding.

The chancellor relied on our decision in *County Board of Education* v. *Austin*, 169 Ark. 436, 276 S.W. 2, and that case is almost on all fours with the case at bar, but under a special statute. The only practical difference in the *Austin* case and the case at bar is that in *Austin*, under a special statute, the fees were first paid into the county general fund and then paid out for various county purposes including sheriff's salary and other expenses of office, and in the case at bar the funds were used for the same purpose without going through the county general fund. Under a special act of the legislature in the *Austin* case, certain officers including the sheriff and collector were authorized to deduct their salaries form the fees and commission on tax monies collected; to make a true report and settlement of same into the county treasury after deducting the amount of their respective salaries, and then § 17 of Act 173 of the Special Acts of 1919 provided: "That all money paid into the treasury arising from fees, emoluments and commissions, collected by the county officers under the provisions of this Act shall be paid into the County General Fund." The question in that case was whether § 17 of the Act violated § 11 of Art. 16 and § 3 of Art. 14 of the Constitution with amendments thereto, and we held that it did because it plainly authorized a diversion of the school funds into the county general fund where it could be used for other than school purposes.

Chief Justice McCulloch wrote a rather strong dissenting opinion in *Austin* in which he was joined by Justice Smith, and in which they expressed the same view now presented by the sheriff in the case at bar. The arguments advanced in the dissenting opinion in *Austin* state:

"If the percentage of commissions prescribed by the statutes was reasonable at that time [time of enactment], it has not been rendered unreasonable, so far as it relates to Lonoke County, by the subsequent special statute providing for the officers of that county to receive definite salaries to be paid out of the statutory commissions turned in to the treasurer."

It was the view of the minority that the original commissions prescribed by the general statutes were determined to be reasonable by the legislature and should be exacted to cover the whole expenses incurred by the county in paying salaries and other things in the collection and handling of the taxes. The minority made the following pertinent observation:

"Absolute accuracy in adjusting the burdens of the expense of collecting and handling public funds is scarcely attainable, hence the determination of the lawmakers should not be disturbed in making those adjustments."

A direct attack was made on the *Austin* decision in the 1944 case of *Terry, County Judge* v. *Thornton,* 207 Ark. 1019, 183 S.W. 2d 787. In that case under an initiated act, the voters of Clay County provided for salaries to county officials and provided for the charging and collection for the use and benefit of the county; the same fees, cost and commissions fixed by law for such services and provided for the payment of any surplus savings, brought about by the Act, into a sinking fund for the purpose of paying outstanding warrants with any balance or surplus to be paid into the general fund. The Act was attacked as a diversion of school funds in violation of Art. 16, § 11, of the Constitution and also Amendment No. 11 to the Constitution. The holding in the *Austin* case was directly attacked in *Thornton* and the contention of the appellants in *Thornton* is set out in the opinion as follows:

"Appellants contention is stated by them as follows: 'There is no diversion of school funds in permitting an individual officer to collect out of school tax moneys his commissions for his services in handling

the fund. Initiated Act No. 1 retains this recognized commission or fee basis as the standard of charge for the services rendered in collecting and handling the school funds. That part of the school funds which is deducted for the fees charged loses its identity as school tax money when it is collected by the officer. The fact that under the salary act a part of the fees may be taken from the officer and transferred to the county general fund does not constitute a diversion of school taxes. The case of County Board of Education v. Austin, 169 Ark. 436, 276 S.W. 2, is fundamentally unsound and should be overruled. The rule laid down by the Austin case has actually been disregarded in subsequent decisions of this court."

This court in *Thornton* then reviewed the *Austin* decision pointing out that the decision in *Austin* was based on the 1898 case of *Gray* v. *Matheny*, 66 Ark. 36, 48 S.W. 678, and in *Thornton* we specifically reaffirmed out decision in *Austin*. We find no new reasons in the case at bar for now overturning our decision in *Austin* and *Thornton*.

We do not agree, however, with the chancellor's holding that the sheriff must, in this case, apportion his salary to the sheriff's office and to the collector's office in proportion to the amount of fees and commissions collected in each. This would be proper in a case where the sheriff, under the fee system, had enough fees in each office, over and above the lawful expenses thereof, to receive the full $5,000 allowed by the Constitution. But in this case, it seems obvious that the lawful expenses of the sheriff's office will exceed the total fees earned by that office. Since this is true, the sheriff would be entitled to receive and retain from his commissions as collector the full $5,000 to which he is entitled under the Constitution, or whatever portion thereof he cannot collect from his fees as sheriff. *State* v. *Harmon,* 190 Ark. 621, 80 S.W. 2d 619.

We do not agree with the appellants that the chancellor committed reversible error in not awarding a de-

cree for money judgment against the sheriff. We shall not add length to this opinion by quoting testimony and analyzing the evidence but the evidence clearly shows that the county, including the school districts, obtained full service, value and benefits from all funds used by the sheriff. The sheriff simply had no idea what portion of his office expense, time and effort, was directed toward the collection of taxes as compared with law enforcement and other duties of the sheriff's office.

As was pointed out in *National Surety Corp.* v. *Billingley,* 205 Ark. 293, 168 S.W. 2d 427, while the courts should be zealous to protect, as far as possible, the taxpayers from loss occasioned by the improper diversion of public funds from one account to another by county officials, justice and equity do not require that the public should actually profit by any such wrongful acts. See also *Independence County* v. *Thompson,* 207 Ark. 1031, 184 S.W. 2d 63, and *Starnes* v. *Sadler,* 237 Ark. 325, 372 S.W. 2d 585.

The decree is modified as above set out, and as so modified, is affirmed.

HARRIS, C.J., and BYRD and HOLT, JJ., dissent.

CONLEY BYRD, Justice, dissenting. The real question here is whether income from the collectors office can be used to support valid sheriff's office expenses. The issue arises because of Article 19 §23 which provides:

"No officer of this State, nor any county, city or town, shall receive, directly or indirectly, for salary, fees and perquisites more than five thousand dollars net profits per annum in par funds, and any and all sums in excess of this amount shall be paid into the State, county, city or town treasury as shall hereafter be directed by appropriate legislation."

Admittedly Sheriff Brown complied with the provisions of Ark. Stat. Ann. § 12-1805 and § 12-1807. The first statute requires any county officer to report to the judge

of the circuit court the total amount of money received by him whether from salary, fees or other emoluments of such office. The latter statute provides that if the total receipts exceed $5,000, the county officer shall report the amount expended by him in the conduct of the business of his office and that the amount so allowed shall be deducted from the total collections for purposes of determining whether the balance remaining in his hands exceeds $5,-000. Any excess over $5,000 shall be paid into the county treasury

Appellants contend however that Sheriff Brown must account for those funds emanating from commissions allowed by statute to the collector's office and used by the sheriff as expenditures in discharging his duties as sheriff. In doing so, however, they do not attack the statutes authorizing the fees but content themselves with attacking the expenditures. This attack by appellants is based upon decisions of this Court, *McCabe, Ex parte,* 33 Ark. 396 (1878), and *Falconer* v. *Shores,* 37 Ark. 386 (1881), to the effect that the office of sheriff and the office of collector are separate and distinct although the same person performs the duties of both offices. While there may be some language in some of our decisions which could be used to support such contention, appellants have cited no case in point.

In *McCabe, Ex parte, supra,* the issue was whether the county court or the circuit court was to approve the collector's bond. This court there held that the Act of March 1, 1875, required the bond to be approved by the circuit court.

In *Falconer* v. *Shores, supra,* Shores had been elected to the office of sheriff at the 1880 general election. Upon receipt of his commission from the Governor, he made the sheriff's bond required by statute but neglected to file his collector's bond before the first Monday in January, 1881, as required by law. Thereupon, the Governor appointed Falconer to serve as collector. In holding, upon a demurrer to the pleadings, that Falconer was entitled to the office of collector and that election was not a prerequisite to his holding the office, we said:

"This, as above observed, leaves the office of collector under legislative control, and doubtless the legislature has power to provide by law for collector to be appointed by the Governor...."

In *Crowell* v. *Barham*, 57 Ark. 195, 21 S.W. 33 (1893), we held invalid a tax sale by a deputy sheriff appointed by a sheriff who was also ex-efficio collector because the deputy had not been appointed by the sheriff as a deputy collector. This holding was on the basis that the office of sheriff and the office of collector are two distinct offices.

In *Gray* v. *Matheny*, 66 Ark. 36, 48 S.W. 678 (1898), under consideration was a salary act requiring all fees of the county treasurer in excess of $800 to be paid into the county general fund. The court held the requirement that the excess fees be paid into the county general fund was invalid under Art. 16 § 11 of the Constitution because it allowed moneys levied for one purpose to be used for another purpose.

In *County Board of Education* v. *Austin*, 169 Ark. 436, 276 S.W. 2 (1925), there was involved an act which required that fees of county officers in excess of a certain amount be paid into the county general fund. We there held that the legislature was wholly without power to command that fees, emoluments and commissions allowed for the collection and handling of school funds in excess of official salaries be paid into the county general fund because of Art. 16 § 11 of the Constitution.

In *State ex rel Poinsett County* v. *Landers*, 183 Ark. 1138, 40 S.W. 2d 432 (1931), the sheriff contended that, under Art. 19 § 23 of the Constitution, he was entitled to $5,000 for his duties as sheriff and an additional $5,000 for his duties as ex-officio collector. We held to the contrary and in doing so we said:

"While it is true that the sheriff, under the Constitution (Art. 7 §46) holds two separate and distinct offices *(Ex parte McCabe,* 33 Ark. 396, *Falconer* v. *Shores,* 37 Ark. 393) and must give a separate bond for each office, it does not follow that he becomes

two officers.  We think that he is necessarily only one officer, but holding two separate and distinct offices, until such time as the Legislature sees fit to separate them....Until the Legislature sees proper to separate the offices of sheriff and collector and require them to be filled and the duties performed by separate persons, we think the plain provisions of both the Constitution and the statute are that the two offices shall be filled by one officer, and that he is entitled to receive for performing the duties of both offices only the net compensation fixed by the Constitution for one officer.  Art. 19 § 23. . . . "

In *State use of Union County* v. *Harman*, 190 Ark. 621, 80 S.W. 2d 619 (1935), the sheriff in filing his accounting pursuant to Ark. Stat. Ann. § 12-1805 and § 12-1807, did not account for the fees and expenses of feeding federal prisoners and expenses derived from the sale of motor vehicle licenses.  In a suit against the sheriff, his sheriff's bondsman and his collector's bondsman, this court pointed out that pursuant to sections 4637 and 4639 of Crawford's & Moses Digest (Ark. Stat. Ann. § 12-1805 and § 12-1807), the sheriff's emoluments, including the fees from federal prisoners and motor vehicle licenses could not exceed $5,000.  In doing so it was said:

"In the case of *State* v. *Landers, supra,* it was held that, where the offices of sheriff and collector are held by the same individual, he is entitled only to $5,000 a year as his entire compensation.  In the case at bar the $5,000 salary is charged against the fees collected by Harman as ex-officio collector of revenue.  Certainly he would be entitled to this sum, although the fees of the sheriff's office did not aggregate this amount, and he might justly take a sufficient amount from the fees collected by him as collector of revenues for that purpose.  The sheriff's salary should be distributed between the two offices in proportion to the amount of fees collected in each, and we hold this to be the just rule.

"In determining the question of liability of the sureties on the sheriff's bond and of the sureties on the

Collector's bond, the court will apportion in conformity to the rule announced the salary of the sheriff and ex-officio collector and, if the sheriff and collector be adjudged due the county any excess of fees on the items involved in this proceeding retained by him over the constitutional limit of his salary, the sum due from fees collected as ex-officio collector shall be ascertained and judgment rendered against his several sureties accordingly."

In the case of *Marshall* v. *Holland,* 168 Ark. 449, 270 S.W. 609 (1925), we pointed out that the power of the legislature is supreme in the fixing of fees and emoluments of county offices. If it were not for the limitation set forth in Art. 19 § 23, the fees and emoluments here collected by Sheriff Brown would be his to do with as he pleases. What right then do the appellants have to attack the allocation of the fees until the total amount of the fees collected exceed the $5,000 limit and the reasonable and necessary expenses of the combined offices? There is no constitutional provision requiring allocation of the expenses as appellants request. The statutory allocation used by Sheriff Brown, Ark. Stat. Ann. § 12-1805 et seq. was enacted on February 1, 1875, following the adoption of the Constitution at the 1874 General Election. Under this enactment we have held in the *Landers case, supra,* that the $5,000 limitation applies to the combined receipts of the two offices. The same logic would dictate that the sheriff in settling under the statute is entitled to his combined expenses.

The appellants' contention that the combined expenses amount to a diversion of funds in violation of Article 16 § 11, is based purely upon the supposition that the commissions allowed by the General Assembly as the fair share of the expense of collecting the school funds remain as school funds at all times. This supposition of course ignores the holdings of this court and the provisions of Ark. Stat. Ann. § 12-1805 and § 12-1807, that the sheriff is only required to account for that portion of the fees that exceed his expenses and $5,000. Up to that amount, the fees and commissions belong to

the sheriff and ex-officio collector to use for salary and in the conduct of the business of his office.

As can be seen from the cases set out above Article 16 § 11 has only been applied to that portion of the fees and commissions exceeding the $5,000 limitation or in those instances where county officials are placed on a salary and the fees and commissions are declared to be county funds such as occurred in *Terry, County Judge v. Thornton*, 207 Ark. 1019, 183 S.W. 2d 787 (1944).

Whether the Act of the legislature establishing the fees and commissions is so arbitrary and unreasonable as to be in violation of Art. 16 § 11 is not before us.

For the reasons stated I would reverse on cross-appeal and dismiss the appellants' complaint.

HARRIS, C.J., and HOLT, J., dissent.

## Opinion on rehearing delivered October 9, 1972

1. SHERIFFS & COLLECTORS—COMPENSATION—USE OF STATUTORY COMMISSIONS.—A sheriff and collector is permitted to use statutory commissions charged for collection of school taxes in defraying combined expenses of the office.
2. SHERIFFS & COLLECTORS—ALLOCATION OF EXPENSES—CONSTITUTIONAL REQUIREMENTS.—A sheriff and collector may deduct his combined expenses from the combined receipts of the two offices and there is no constitutional provision requiring allocation of the expenses.
3. SHERIFFS & COLLECTORS—COMPENSATION—ACCOUNTING FOR FEES, NECESSITY OF.—A sheriff and collector has only to account for fees and commissions when the total thereof exceeds his total expenses and $5,000, for up to that amount the fees belong to the sheriff and collector to use for salary and in the conduct of business of the office.

CONLEY BYRD, Justice. Four school districts in Chicot County and nine citizens and taxpayers of that county, hereafter referred to as appellants, instituted the present action in the Chicot County Chancery Court against Max Brown individually and as sheriff and collector of Chicot County, hereafter referred to as sheriff, seeking injunctive

relief for unlawfully diverting school monies to other purposes, and to recover judgment against him for monies diverted and lost to the school districts for the years 1967 and 1968. The chancellor restrained and enjoined the sheriff from using tne statutory commissions charged for the collection of school taxes to pay the expenses of the office of sheriff, but refused to enter judgment against the sheriff for any sums so used. The four school districts and nine citizens and taxpayers have appealed from that part of the decree denying them a judgment and the sheriff has cross appealed. Because of our disposition of the case on cross appeal, we need not reach the matters urged by the appellants.

The real question here is whether income from the collector's office can be used to support valid sheriff's office expenses. The issue arises because of Article 19 § 23 which provides:

"No officer of this State, nor any county, city or town, shall receive, directly or indirectly, for salary, fees and perquisites more than five thousand dollars net profits per annum in par funds, and any and all sums in excess of this amount shall be paid into the State, county, city or town treasury as shall hereafter be directed by appropriate legislation."

Admittedly Sheriff Brown complied with the provisions of Ark. Stat. Ann. § 12-1805 and § 12-1807. The first statute requires any county officer to report to the judge of the circuit court the total amount of money received by him whether from salary, fees or other emoluments of such office. The latter statute provides that if the total receipts exceed $5,000, the county officer shall report the amount expended by him in the conduct of the business of his office and that the amount so allowed shall be deducted from the total collections for purposes of determining whether the balance remaining in his hands exceeds $5,000. Any excess over $5,000 shall be paid into the county treasury.

Appellants contend however that Sheriff Brown must account for those funds emanating from commissions al-

lowed by statute to the collector's office and used by the sheriff as expenditures in discharging his duties as sheriff. In doing so, however, they do not attack the statutes authorizing the fees but content themselves with attacking the expenditures. This attack by appellants is based upon decisions of this Court, *McCabe, Ex parte,* 33 Ark. 396 (1878), and *Falconer* v. *Shores,* 37 Ark. 386 (1881), to the effect that the office of sheriff and the office of collector are separate and distinct although the same person performs the duties of both offices. While there may be some language in some of our decisions which could be used to support such contention, appellants have cited no case in point.

In *McCabe, Ex parte, supra,* the issue was whether the county court or the circuit court was to approve the collector's bond. This court there held that by the Act of March 1, 1875, required the bond to be approved by the circuit court.

In *Falconer* v. *Shores, supra,* Shores had been elected to the office of sheriff at the 1880 general election. Upon receipt of his commission from the Governor, he made the sheriff's bond required by statute but neglected to file his collector's bond before the first Monday in January, 1881, as required by law. Thereupon, the Governor appointed Falconer to serve as collector. In holding, upon a demurrer to the pleadings, that Falconer was entitled to the office of collector and that election was not a prerequisite to his holding the office, we said:

"This, as above observed, leaves the office of collector under legislative control, and doubtless the legislature has power to provide by law for collector to be appointed by the Governor. . . ."

In *Crowell* v. *Barham,* 57 Ark. 195, 21 S.W. 33 (1893), we held invalid a tax sale by a deputy sheriff appointed by a sheriff who was also ex-officio collector because the deputy had not been appointed by the sheriff as a deputy collector. This holding was on the basis that the office of sheriff and the office of collector are two distinct offices.

In *Gray* v. *Matheny,* 66 Ark. 36, 48 S.W. 678 (1898), under consideration was a salary act requiring all fees of the county treasurer in excess of $800 to be paid into the county general fund. The court held the requirement that the excess fees be paid into the county general fund was invalid under Art. 16 § 11 of the Constitution because it allowed moneys levied for one purpose to be used for another purpose.

In *County Board of Education* v. *Austin,* 169 Ark. 436, 276 S.W. 2 (1925), there was involved an act which required that fees of county officers in excess of a certain amount be paid into the county general fund. We there held that the legislature was wholly without power to command that fees, emoluments and commissions allowed for the collection and handling of school funds in excess of official salaries be paid into the county general fund because of Art. 16 § 11 of the Constitution.

In *State ex rel Poinsett County* v. *Landers,* 183 Ark. 1138, 40 S.W. 2d 432 (1931), the sheriff contended that, under Art. 19 § 23 of the Constitution, he was entitled to $5,000 for his duties as sheriff and an additional $5,000 for his duties as ex-officio collector. We held to the contrary and in doing so we said:

> "While it is true that the sheriff, under the Constitution (Art. 7 § 46) holds two separate and distinct offices (*Ex parte McCabe,* 33 Ark. 396, *Falconer* v. *Shores,* 37 Ark. 393) and must give a separate bond for each office, it does not follow that he becomes two officers. We think that he is necessarily only one officer, but holding two separate and distinct offices, until such time as the Legislature sees fit to separate them. . . . Until the Legislature sees proper to separate the offices of sheriff and collector and require them to be filled and the duties performed by separate persons, we think the plain provisions of both the Constitution and the statute are that the two offices shall be filled by one officer, and that he is entitled to receive for performing the duties of both offices only the net compensation fixed by the Constitution for one officer. Art. 19 § 23. . . ."

In *State use of Union County* v. *Harmon,* 190 Ark. 621, 80 S.W. 2d 619 (1935), the sheriff in filing his accounting pursuant to Ark. Stat. Ann. § 12-1805 and § 12-1807, did not account for the fees and expenses of feeding federal prisoners and expenses derived from the sale of motor vehicle licenses. In a suit against the sheriff, his sheriff's bondsman and his collector's bondsman, this court pointed out that pursuant to sections 4637 and 4639 of Crawford's and Moses Digest (Ark. Stat. Ann. § 12-1805 and § 12-1807), the sheriff's emoluments, including the fees from federal prisoners and motor vehicle licenses could not exceed $5,000. In doing so it was said:

"In the case of *State* v. *Landers, supra,* it was held that, where the offices of sheriff and collector are held by the same indivudial, he is entitled only to $5,000 a year as his entire compensation. In the case at bar the $5,000 salary is charged against the fees collected by Harman as ex-officio collector of revenue. Certainly he would be entitled to this sum, although the fees of the sheriff's office did not aggregate this amount, and he might justly take a sufficient amount from the fees collected by him as collector of revenues for that purpose. The sheriff's salary should be distributed between the two offices in proportion to the amount of fees collected in each, and we hold this to be the just rule.

"In determining the question of liability of the sureties on the sheriff's bond and of the sureties on the Collector's bond, the court will apportion in conformity to the rule announced the salary of the sheriff and ex-officio collector, and, if the sheriff and collector be adjudged due the county any excess of fees on the items involved in this proceeding retained by him over the constitutional limit of his salary, the sum due from fees collected as ex-officio collector shall be ascertained and judgment rendered against his several sureties accordingly."

In the case of *Marshall* v. *Holland,* 163 Ark. 449, 270 S.W. 609 (1925), we pointed out that the power of the legislature is supreme in the fixing of fees and emoluments of

county offices. If it were not for the limitation set forth in Art. 19 § 23, the fees and emoluments here collected by Sheriff Brown would be his to do with as he pleases. What right then do the appellants have to attack the allocation of the fees until the total amount of the fees collected exceeds the $5,000 limit and the reasonable and necessary expenses of the combined offices? There is no constitutional provision requiring allocation of the expenses as appellants request. The statutory allocation, used by Sheriff Brown, Ark. Stat. Ann. § 12-1805 et seq. was enacted on February 1, 1875, following the adoption of the Constitution at the 1874 General Election. Under this enactment we have held in the *Landers* case, *supra,* that the $5,000 limitation applies to the combined receipts of the two offices. The same logic would dictate that the sheriff in settling under the statute is entitled to his combined expenses.

The appellants' contention that the combined expenses amount to a diversion of funds in violation of Article 16 § 11, is based purely upon the supposition that the commissions allowed by the General Assembly as the fair share of the expense of collecting the school funds remain as school funds at all times. This supposition of course ignores the holdings of this court and the provisions of Ark. Stat. Ann. § 12-1805 and § 12-1807, that the sheriff is only required to account for that portion of the fees that exceed his expenses and $5,000. Up to that amount, the fees and commissions belong to the sheriff and ex-officio collector to use for salary and in the conduct of the business of his office.

The language from some of our opinions unfortunately is subject to being read as both affirming and reversing the trial court's ruling on the issue. Typical of such language is that in *State use of Union County* v. *Harman, supra,* where we said:

"In the case of *Crowell* v. *Barham,* 57 Ark. 195, 21 S.W. 33, this court, following and approving the doctrine announced in *Ex parte McCabe,* 33 Ark. 396, and in *Falconer* v. *Shores,* 37 Ark. 386, held that the

offices of sheriff and collector, although usually filled by one and the same person, are as separate and distinct as though held by separate incumbents. The doctrine announced in these cases was reaffirmed and approved in the recent case of *State ex rel. Poinsett County* v. *Landers*, 183 Ark. 1138, 40 S.W. (2d) 432. Therefore, the fees collected and the expenditures incurred in the discharge of the office of sheriff have no relation to the office of collecter, and *vice versa.* Accordingly, the one holding the office of sheriff and ex-officio collector should prepare and file separate statements of account of the fees and disbursements of each office, and *where any liability exists for failure to account and pay into the treasury excess fees collected as sheriff,* the sureties on the collector's bond are not liable; and, in cases where the fees are collected by the sheriff as ex-officio collector of revenues, the sureties on his bond as collector are liable and not the sureties on his bond as sheriff." (Emphasis ours).

When it is remembered that the same opinion points out that the sheriff is entitled to take a sufficient amount from the fees and commissions of the collector's office to make up his $5,000 salary irrespective of the emoluments of each office above expenses, it at once becomes obvious that the above quoted language must be taken to mean that separate books must be kept when dealing with fees and commissions in excess of the expenses and the $5,000 salary limit. This construction comports with the holdings in *County Board of Education* v. *Austin, supra,* and *Terry, County Judge* v. *Thornton,* 207 Ark. 1019, 183 S.W. 2d 787 (1944). In those cases the fees and commissions had been vested in the county, whereas when the sheriff and collector is operating under the fee system, there is only a contingent right in the respective taxing agencies —that right being contingent upon the fees and commissions exceeding the expenses of the sheriff and collector and his $5,000 salary limit.

As can be seen from the foregoing discussion Article 16 § 11, has only been applied when the fees and commissions have become vested or where the total amount thereof exceeded the $5,000 salary limit and the total ex-

penses of the office of sheriff and collector. This is in accord with the Constitution which placed the duties of sheriff and collector upon one officer until such time as the legislature should provide otherwise. The very first legislature following the adoption of the Constitution provided, pursuant to Article 19 § 23, that the sheriff and collector had only to account for the fees and commissions when the total thereof exceeded his total expenses and $5,000, Ark. Stat. Ann. § 12-1805 and § 12-1807 (Repl. 1968).

For the reasons herein stated the decree of the trial court enjoining the sheriff and ex-officio collector from using the statutory commissions charged for the collection of school taxes in defraying the combined expenses of his office is set aside.

Reversed and remanded for entry of decree dismissing appellants' complaint.

GEORGE ROSE SMITH, FOGLEMAN and JONES, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I am unable to join in the court's retreat from what seems to me to be an obviously correct legal result reached in the original opinion handed down July 17, 1972, in spite of the fact that it is probably less appealing because of its potential impact upon the adequacy of financing the law enforcement at the county level in certain counties in this state. No one is more aware than I of the plight in which some sheriffs find themselves when they are forced to try to man, maintain and equip an effective, modern law enforcement agency without resort to anything except the fees that office may collect. However desirable it may be to assist in seeing that these officers have resort to some other funds, our constitution and statutes do not permit any portion of the collector's fees derived from ad valorem school tax collections to be used for law enforcement purposes. Alleviation of the problem is a legislative responsibility, either of the General Assembly, or, at the local level, of voters by enacting adequate measures through initiative procedures. The solution is not judicial "legislation" taking funds raised for hard-pressed schools.

We have two constitutional barriers to diversion of taxes collected for school purposes. They are Article 14,

Section 3, as amended by Amendment 11 and by Amendment 40, and Article 16, Section 11. The first section provides that no tax levied for maintenance of schools, the erection and equipment of school buildings or the retirement of existing indebtedness in a school district shall be appropriated for any other purpose. The latter section states that no moneys arising from a tax levied for one purpose shall be used for any other purpose. Both prohibit the use of tax funds levied for school purposes to defray expenses of law enforcement.

This court once construed a similar provision in Amendment 3 of the Constitution authorizing a millage levy for county roads, to actually prohibit the payment of any part of the salary of the county judge as road commissioner or any administrative expenses. *Burrow* v. *Floyd,* 193 Ark. 220, 99 S.W. 2d 573. The court then recognized in *Ladd* v. *Stubblefield,* 195 Ark. 261, 111 S.W. 2d 555, that it could be urged, with convincing logic, that supervision by the road commissioner is an essential part of the cost of road and bridge construction and repair, but adhered to the extremely narrow limits prescribed in *Burrow*. In *Lawhon* v. *Johnson,* 196 Ark. 991, 120 S.W. 2d 720, this court receded from the very narrow construction applied in *Burrow*, but only upon the basis that a portion of the salary of the county judge from these funds would not be a misappropriation because his services in the supervision of construction and repair of roads and bridges were as much a necessary expense as the driving of a grader, or the use of a plow or other instrumentality. This holding went no further than to say that such expenditures came within the purposes for which the tax was levied. It is clear from this action, however, that payments for services from taxes levied for a specific purpose must contribute directly to the accomplishment of that purpose.

Law enforcement makes no direct contribution to the accomplishment of the purposes for which our constitution authorizes the levy of school taxes, although collection of the taxes does. In *Dew* v. *Ashley County,* 199 Ark. 361, 133 S.W. 2d 652, we said that perhaps there was no better settled principle of law than the one providing that taxes levied and collected for one purpose may not be diverted or appropriated to any other purpose. Unitl today it has remained just that firmly settled.

In holding that the payment of county superintendents of schools and county boards of education from the common school fund did not constitute a diversion of school funds in violation of constitutional prohibition, this court said that the constitution does prohibit the application of the common school fund to "any other branch of state expenditures except that immediately and directly connected with the establishment and maintenance of a common school system." *Little River County Board of Education* v. *Ashdown Special School District,* 156 Ark. 549, 247 S.W. 70.

We have uniformly adhered to the philosophy expressed by the Supreme Court of Washington and first quoted by us in *Dickinson* v. *Edmondson,* 120 Ark. 80, 178 S.W. 930, Ann. Cas. 1917C 913, which is:

> To take from the one and give to the other by indirect methods that which was designed for a special purpose would defeat the whole scheme of the law and open a way for the ultimate transposition of funds held under a most sacred trust. Courts have been zealous in protecting the money set apart for the maintenance of the free schools of the country. They have turned a deaf ear to every enticement, and frowned upon every attempt, however subtle, to evade the Constitution. Promised benefit and greater gain have been alike urged as reasons, but without avail. They have endeavored to say in unmistakable terms that the common school fund is just what it purports to be, a fund to be used for the sole purpose of supporting the graded schools of the commonwealth under the sanction of fixed and uniform laws. * * *

See, *County Board of Education* v. *Austin,* 169 Ark. 436, 276 S.W.; *Terry* v. *Thornton,* 207 Ark. 1019, 183 S.W. 2d 787.

We first applied Section 11, Article 16, to fees of county officials in *Gray* v. *Matheny,* 66 Ark. 36, 48 S.W. 678, when we said that the excess fees or commissions on funds paid over to a county treasurer remaining after the payment of his salary belong to the county, and go to the respective funds for which the tax was levied and col-

lected. The holding in *Gray* v. *Matheny* was sustained (even though it was dictum) by a divided court in *County Board of Education* v. *Austin,* supra, in which the dissenters argued vigorously that the pertinent language in *Gray* was dictum, and took the position now taken by the majority, saying that an act requiring the payment of excess fees into the county treasury constituted a legislative determination that the commissions of the collector and treasurer fixed by general statute were a reasonable exaction to cover the expenses of collecting and handling the taxes. This case directly involved an excess fee situation because the act involved required the payment into the county general fund by all county officials of all fees and commissions in excess of the respective salaries and fees allowed them by a special act of the General Assembly. Any idea that the school districts ever lost, even temporarily, their interest in these funds while in the hands of the county officials is dispelled in the opinion in that case, when the court said:

> Before the present law was passed, the commissions allowed for the collection and handling of school funds raised by taxation were paid out of such funds. Indeed, they are a part of such funds. * * * The Legislature is wholly without power to command that fees, emoluments, and commissions, allowed for the collection and handling of school funds by the county officers, be covered into the county general fund.

We recognized in *Austin* that the payment of a just proportion of the cost of the collection of taxes levied for the support of schools was not a diversion of the taxes, but held that withholding any excess over the just proportion of these funds was an unconstitutional diversion. We said:

> Certainly the school fund should not be made to bear more than its just proportion of the salaries of the collector and treasurer. This fund, however, should be required to bear its just proportion of these salaries. To so require would not be a diversion of such fund, because the school fund must be collected and paid into the treasury, and must be handled and disbursed after it is covered into the treasury. So the act of the

officers in collecting and handling the school fund is germane to the purpose for which it is raised.

Therefore the county court, in determining the excess of commissions to be credited to the school fund, should apportion or prorate the amount to be paid by the school fund toward the salaries of the collector and treasurer in the proportion that the total amount of the school fund collected and disbursed by these officers for one year bears to the total amount of all funds raised by taxation for that year; that is, by taxes for county, state, municipal, school, road and all general taxes, for these come within the purview of article 2, § 23, and article 14, § 3, and article 16, § 11, of the Constitution of 1874.

Any infirmity that might be attributed to this decision because of the sharp division of the court and the majority's adoption of dictum from a previous case was dispelled by the unanimous decision in *Terry* v. *Thornton,* 207 Ark. 1019, 183 S.W. 2d 787, in which one of the *Austin* dissenters participated. There *Austin* was directly attacked as unsound. In *Terry,* the initiated salary act endeavored to do just what the majority opinion does, i.e., make the excess fees from tax collection bear the burden of unpaid expenses of unrelated governmental agencies. This was to be accomplished by placing the excess of fees, costs, and commissions over and above salaries of the county officers into a sinking fund to retire outstanding warrants. The court meticulously reviewed and examined the *Austin* decision and affirmed and adhered to it.[1]

These cases seem to me to be clearly indistinguishable. As the court said in *Crowell* v. *Barham,* 57 Ark. 195, 21 S.W. 33, confusion only arises when two offices are held by one person. But that confusion has been completely dispelled by subsequent decisions.

There can be no doubt that the office of sheriff and the office of collector have uniformly been held by this

---

[1]In treating a similar constitutional limitation in the same article, we held that action of diversion may not be done by indirection when it is prohibited to be done by direction. *Walls* v. *State Board of Education,* 195 Ark. 955,116 S.W. 2d 354.

court to be two sepatate and distinct offices for all purposes even though held by one person. None of the language of any of these decisions is dictum, as, in each instance, it was necessary to the conclusion reached by the court. In *McCabe, Ex Parte,* 33 Ark. 396, we said:

> The relator, under existing laws, holds two offices; he holds the office of sheriff, and he holds the office of collector. They are distinct offices though held by the same person, and he is required to give bond as sheriff, and also to give bond as collector.

In *Falconer* v. *Shores,* 37 Ark. 386, we repeated:

> A person who is sheriff and collector, under existing laws, holds two distinct offices, and is required to give bond as sheriff, and also to give bond as collector.

Then in *Crowell* v. *Barham,* 57 Ark. 195, 21 S.W. 33, we reiterated:

> The offices of sheriff and collector, though usually exercised by the same person, are as separate and distinct as though held by different incumbents.

The earlier authorities were followed in *State* v. *Landers,* 183 Ark. 1138, 40 S.W. 2d 432, where we said:

> We think that he is necessarily only one officer but holding two separate and distinct offices, until such time as the Legislature sees fit to separate them. * * * The sheriff by virtue of being sheriff holds the office of collector. Until the Legislature sees proper to separate the offices of sheriff and collector and require them to be filled and the duties performed by separate persons, we think the plain provisions of both the Constitution and the statute are that the two offices shall be filled by one officer and that he is entitled to receive for performing the duties of both offices only the net compensation fixed by the Constitution for one officer. Article 19, § 23.

See also, *Marshall* v. *Holland,* 168 Ark. 449, 270 S.W. 609.

We have never deviated from this position. Therefore, the sheriff is only one officer and his total compensation is limited to $5,000 by Article 19, § 23. *State* v. *Landers,* supra. He may receive this total from the net fees of both offices, and if there are not sufficient fees remaining after payment of expenses incurred in the discharge of one of the offices to pay the amount of that compensation proportionate to the fees collected in that office, the balance may be charged against the other. *State* v. *Harman,* 190 Ark. 621, 80 S.W. 2d 619. But in *Harman,* decided more than 35 years ago, we laid to rest any idea that the fees or expenditures of one office have any relation to the other. There has been no relevant constitutional or statutory change since that date.

The most patent error in the majority opinion is in the unfounded assumption that Ark. Stat. Ann. §§ 12-1805 and 12-1807 (Repl. 1968) may be complied with by a single statement charging the expenditures of both offices against the total fees from both and that fees are in excess of constitutional limits only when the fees from both offices exceed the expenditures from both. These two sections were a part of Act 47 of 1875 and a part of the enabling act putting Article 19, Section 23 into execution. See *State* v. *Landers,* supra; *Griffin* v. *Rhoton,* 85 Ark. 89, 107 S.W. 380. As pointed out in *Griffin,* the act was enacted by the first legislature which convened after the adoption of the Constitution of 1874, and which included many members of the Constitutional Convention.

The first section of this act requires each officer of a county to keep a record book in which shall be entered an account of all moneys received by him in payment of fees or by way of emoluments pertaining to "his office." Ark. Stat. Ann. § 12-1801 (Repl. 1968). The officers of each county are required by Ark. Stat. Ann. § 12-1805 to report to the circuit judge the total amount of money received by such officer during the preceding year, on account of "such office" whether from salary, fees or other emoluments or perquisites of office. This report must be made in any event and not just when the total fees exceed the expenses plus $5,000 as stated in the majority opinion. Under Ark. Stat. Ann. § 12-1807, if the total *receipts* of "the office" (not the officer) exceed $5,000, then the officer

must report the amount expended by him in the conduct of the business of "his office" for the year, and all such expenditures as are approved by the examining judge are to be deducted from the gross receipts and the balance in excess of $5,000 is to be paid into the treasury of the county.

Any question about the necessity of separate reports for the two offices was laid to rest in *State* v. *Harman*, 190 Ark. 621, 80 S.W. 2d 619, when this court said:

> * * * the fees collected and the expenditures incurred in the discharge of the office of sheriff have no relation to the office of collector, and vice versa. Accordingly, the one holding the office of sheriff and ex officio collector should prepare and file separate statements of account of the fees and disbursements of each office, and where any liability exists for failure to account and pay into the treasury excess fees collected as sheriff, the sureties on the collector's bond are not liable; and, in cases where the fees are collected by the sheriff as ex officio collector of revenues, the sureties on his bond as collector are liable and not the sureties on his bond as sheriff.

The majority seems to omit the conjunction "and" between the word "office" and the word "where" in the first clause of the last sentence, and arrive at a conclusion that separate statements for the separate offices are not required except when there is a question as to the liability of sureties on the official bonds for the separate offices. I submit that the language as written cannot properly be so construed.

When a constitutional provision or a statute has been construed and that construction consistently followed for many years, such construction should not be changed. *O'Daniel* v. *Brunswick-Balke Collender Co.*, 195 Ark. 669, 113 S.W. 2d 717.

I submit that no reason for changing either the construction or application of the pertinent constitutional and statutory provisions by a long line of decisions has been shown, even though I might arrive at a result more pleasing

to me if the whole subject had never been considered. I feel compelled to adhere to the original opinion.

I am authorized to state that Mr. Justice George Rose Smith and Mr. Justice Jones join in this dissent.