## SPECIAL SCHOOL DISTRICT OF FORT SMITH #100 *v.* SEBASTIAN COUNTY, Arkansas

82-188                                                            641 S.W.2d 702

### Supreme Court of Arkansas
### Opinion delivered November 8, 1982

[Rehearing denied December 6, 1982.]
[Opinion amended December 13, 1982.]

*Pryor, Robinson & Barry*, by: *H. Clay Robinson,* for appellant.

*Martin, Vater & Karr,* by: *Charles Karr,* for appellee.

STEELE HAYS, Justice. At issue in this case are certain ad valorem tax monies assessed for the appellant, Special School District of Fort Smith, No. 100. The specific part of the tax monies with which they are concerned is that portion which by statute is designated as collector's commissions. It is the position of the School District that the appellee, Sebastian County, may apply the statutory collector's commission to the necessary costs of collecting taxes but that any excess amount of the commission must be disbursed to the taxing unit, the School District. It argues that any other application of the funds is in violation of the Arkansas Constitution, Art. 16, § 11, and of Act 123 of 1975 which expressly requires these excess commissions be paid over to the School District. The County maintains that because it has a combined office of sheriff and collector, the monies in question may be applied to the consolidated expenses of both functions of that office, and not to the collector's expenses alone. It further argues that Act 123 of 1975 is unconstitutional. The School District requests the return of the taxes collected in 1980 for 1979, now held in the registry of the trial court, and that all excess collector's commissions collected in subsequent years be paid over to the appropriate taxing agencies.

This action was initiated by the School District as a writ of mandamus against the County. The trial court ruled in favor of the County for the 1979 taxes and also entered a declaratory judgment in its favor in connection with the School District's taxes assessed in years subsequent to 1979. The trial court ruled Act 123 of 1975 unconstitutional.

We disagree with the trial court's decision on the School District's first argument. That issue is whether the application of excess collector's commissions to the combined

expenses of the sheriff/collector's office is a violation of Arkansas Constitution, Art. 16, § 11:

> No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same; and no moneys arising from a tax levied for one purpose shall be used for any other purpose.

In 1972, we decided *Dermott Special School District v. Brown*, 253 Ark. 222-P, 485 S.W.2d 204. In a similar fact sitaution we held that the excess collector's fees could be used to defray the *combined* expenses of the sheriff/collector's office.

We now overrule *Dermott*.

*Dermott's* holding was based on the propositions that: 1) the sheriff/collector's office is not two distinct offices; 2) that the sheriff has a right to the $5,000 salary *plus* his expenses and, therefore, 3) the taxing units only have a contingent right to the money — the sheriff first having a right to the $5,000 and his expenses.

The majority in *Dermott* based its recognition of the sheriff's claim to the money as belonging to him, on Ark. Stat. Ann. § 12-1805 and 12-1807.[1] However, a close reading of that statute shows that only the salary is covered and that any expenses over that must be turned over to, and itemized for, a reviewing officer. Whether this constitutes a *right* to the expenses is certainly debatable.

Even granting that those provisions may give an officer a "right" to his expenses above his salary, it does not necessarily mean, as in this case, that he has a right to those expenses when the funds to pay those expenses will come from school monies that bear no relationship to the office in question. We have outlined in a number of cases that the sheriff/collector's office constitues two distinct and separate offices. *McCabe, Ex Parte*, 33 Ark. 396 (1878); *Falconer v. Shores*, 37 Ark. 386 (1881); *Crowell v. Barham*, 57 Ark. 195, 21 S.W. 33 (1893) and *State v. Landers*, 183 Ark. 1138, 40 S.W. 432 (1931). It is particularly clear in our present case

---

[1]Arkansas Constitution, Art. 19 § 23 sets the salary of county officers at $5,000. Ark. Stat. Ann. § 12-1805 and 12-1807 were part of Act 47 of 1875 putting Art. 19 § 23 into execution.

that the sheriff/collector's office is two distinct offices. The record offers a copy of the budget for the sheriff/collector's office. It is divided into six divisions: Communications, Detention Center, Law Enforcement Personnel, Sheriff's Operations, Sheriff's Vehicles and Collector. Under each division are itemized and detailed entries for expenses and salaries. Nothing could make it clearer that the collector and sheriff are two separate functions that bear no relationship to each other. To suggest then that school funds used for the Detention Center or Sheriff's Vehicles is not a diversion of funds is simply erroneous. Sections 12-1805 and 12-1807 would certainly be governed by the strictures of Art. 16 § 11. The sheriff's expenses, by whatever name the office is called, cannot be funded by monies raised for school purposes.

We also note that the use of school funds for other than their intended purpose is specifically limited by Arkansas Constitution, Art. 14 § 2, and Amendment 40; and this principle was affirmed in *Little River County Board of Education* v. *Ashdown Special School District*, 156 Ark. 549, 247 S.W. 70 (1923) and *County Board of Education* v. *Austin*, 169 Ark. 436, 276 S.W. 2 (1925).

*Dermott* was distinguished from *Austin* and *Terry, County Judge* v. *Thornton*, 207 Ark. 1019, 183 S.W.2d 787 (1944) by saying that in those cases, the taxing agencies had a vested right in the money, whereas in *Dermott*, operating under the fee system, the taxing agents only had a contingent right because up to salary and expenses the money belonged to the sheriff. However, as stated above, we do not agree that the money for the sheriff's expenses belongs to him, and the money collected, therefore, remains the school's, minus whatever is due the *collector* for salary and expenses. The problem is not whether or not the county's salaries are based on the fee system, or at what point monies become vested in one agency or the other, but simply whether the excess collector's fees from school taxes are being used for something other than school purposes.

The fact situation in *Austin* and *Thornton* is actually very similar to *Dermott* and to this case. We found a diversion of school funds in those cases. There, the salaries of various officers were deducted from fees they collected and

any excess was put into the county general fund where, in *Austin* for example, the money could be used for such general purposes as general public improvements. We found this in violation of Art. 16 § 11. This is precisely the situation we have in this case. Certainly the collector, sheriff, or any other officer has a right to his salary up to the fees he collects (Ark. Stat. Ann. § 12-1807) and arguably from those fees, his expenses. But that statute is limited by Art. 16 § 11. Were the collector to take the excess fees raised from school funds and apply them to road improvements, clearly Art. 16 § 11 would prohibit that. And here, the fact that the two offices are headed by a dual officer, does not permit the use of school funds for purposes plainly unrelated to school purposes.

In *Dermott*, the majority reasoned that because we have accepted as constitutionally permissible the application of collector's fees to sheriff's salary (*Landers, supra*), that it is a logical extension to also allow those fees to defray the sheriff's expenses. This might be so for counties of a small population where the two officers are inextricably intertwined. [2] But here where the sheriff's budget is so large ($792,306 in 1980) and readily lends itself to specific itemization as shown by the budget in the record, the sheriff's expenses are so distinct from the collector's function that the point is not worth arguing.

We realize that our decision will have an impact on 50 other counties where the diversion of funds is less conspicuous and where reliance has been placed on our decision of *Dermott*, decided 10 years ago. But in spite of our concern for these situations we are compelled to declare the challenged practice to be in clear violation of the Constitution.

There may be a constitutionally acceptable dividing line for these cases, but as a judicial body we are not equipped to determine where that line should be drawn.

[2] Of the 51 counties having combined offices of sheriff and collector, the population ranges in size from 6,000-46,000 (averaging 16,000/county), excluding Sebastian County with a population of 94,000.

Of the 24 counties with separate sheriff and collector's offices the population ranges in size from 14,000-99,000 (averaging 42,000), excluding Pulaski County with a population of 340,000.

However, to lessen the harshness of our reversal on counties that have relied on our earlier decision in *Dermott*, and to allow for alternative financing arrangements, we make this decision prospectively effective with the collection of 1983 taxes in 1984.

While we make this change prospectively, nonetheless with respect to *this* case our decision is given immediate effect, so that the efforts of a litigant to bring about needed changes in the law will not go unrewarded, because without such inducements changes might not occur. See *Parish* v. *Pitts*, 244 Ark. 1239, 429 S.W.2d 45 (1968). The funds held in the registry of the trial court should be disbursed to the appellant.

Appellant's second argument is that Act 123 of 1975 is not unconstitutional. That Act provides, among other things:

> Hereafter, in all counties in this State having a population of not less than 78,000 and not more than 84,000 . . . a portion of the excess collector fees shall be remitted annually to all school districts in such counties. The amount to be remitted to each such school district shall be that portion of the excess fees that the millage levied by any such school district bears to the total millage levied by all taxing units-in the county.

> In each such county of the State where there is a combined office of sheriff/collector, separate records shall be kept of the cost of the salaries and office expenses of the county sheriff's functions and of the county collector functions of the combined office, in order that the cost of performing the duties of the county collector can be determined separately from the cost of performing the duties of county sheriff.

This Act has been challenged by the County as special or local legislation and in violation of the Arkansas Constitution, Amendment 14, which states: "The General Assembly shall not pass any local or special act. . . . " By stipulation, the parties agree when this Act was passed that Sebastian County was the only county within the population range of that statute.

We have held on a number of occasions that legislation that will effectively apply to only one county, is local and special and therefore unconstitutional. *Webb* v. *Adams*, 180 Ark. 713, 23 S.W.2d 617 (1929), *Humphrey* v. *Thompson*, 222 Ark. 884, 263 S.W.2d 716 (1954). The appellant suggests that this Act has a reasonable relation to the classification, in that the purpose of the legislation is to provide for the application of excess collector's commissions in a county where the size of the population causes the excess commissions to be large. This would be a commendable purpose, but if that were the case there would be no need to add an upper limit to the population range for the statute to have the desired result. Consequently, this Act specifically and effectively limits its application to Sebastian County only, and is in violation of Amendment 14. As we stated in *Humphrey, supra*:

> The classification of counties and municipalities is legitimate when population or other basis of classification bears a reasonable relation to the subject of the legislation, and the judgment of the legislature in the matter should control unless the classification is . . . made for the purpose of evading the Constitution. . . .

> Our view is that the so-called classification is but an attempt by technicality to evade what the courts have heretofore said the people meant when by amendment to the Constitution they struck at the evil flowing from local and special laws.

Reversed in part. Affirmed in part.

Adkisson, C.J., and Holt, J., dissent in part.

Frank Holt, Justice, dissenting in part. Though the majority's opinion is well written and well researched, I find it disturbing that the majority has chosen to overrule *Dermott Special School District* v. *Brown*, 253 Ark. 222, 45 S.W.2d 204 (1972), which was decided just ten years and one month ago. This is one of those areas of the law in which the doctrine of *stare decisis* should particularly apply. Presently, fifty-one counties have organized their financial arrangements in reliance upon our decision in *Dermott*. Stability in the law is especially important in such circumstances.

Making today's ruling apply prospectively, to a future date, arbitrarily selected and based upon no constitutional or statutory provision, does not remedy the instability resulting from today's decision.

Furthermore, neither party to this litigation requested that *Dermott* be overruled, and, therefore, neither party briefed the dispositive point in the case, as the majority has decided it. Hence, without the aid of briefs or oral argument on the point and without having been requested to so act, this court overrules itself and reverses the trial court who, like the parties to this litigation, properly relied upon *Dermott*. Generally, we attempt to avoid reversing a prior decision of the court, even when the issue is squarely presented, but today the majority has decided, *sua sponte*, to do so.

Also, the manner in which the majority rules raises problems that even the majority admits the judiciary is not equipped to solve. In effect, we are digging up snakes for the legislature to kill or getting into a "briar thicket." The majority admits that there may be counties so small that the offices of sheriff and collector are inextricably intertwined so that those counties may constitutionally apply the collector's commissions from school taxes to pay the expenses of the sheriff's office, and it also admits that we cannot draw a line as to which counties are that small and which are that large. Presumably, the legislature will have to draw this line. However, whenever the legislature does so, it can become our duty to review the legislature's decision. Thus, we today invite a task for which we admit that we are not equipped. Since the majority admits that we are not equipped to draw this line, no guidance is given the legislature as to what is permissible. Since the majority overrules rather than distinguishes *Dermott*, it presumably is deciding that Chicot County is so large that, there, the sheriff and ex-officio collector may not apply the collector's commissions to the expenses of the sheriff's office. Otherwise, *Dermott* would be distinguished due to the size of the county, rather than overruled outright. The record here reflects that the population of Chicot County is approximately 17,000, as opposed to 94,000 in Sebastian County. Nothing in the record reflects the accounting practices of the office of sheriff and collector

in Chicot County, so I see no basis for the decision today that the Chicot County sheriff may not apply the collector's commissions to the expenses of the sheriff.

None of the cases relied upon by the majority for the proposition that the sheriff/collector's office constitutes two distinct and separate offices held that the constitution mandated that the accounting and fiscal arrangement of the sheriff/collector also is distinct and separate. *McCabe, Ex Parte*, 33 Ark. 396 (1878), and *Falconer* v. *Shores*, 37 Ark. 386 (1881), held that a separate bond must be posted for each office. *Crowell* v. *Barham*, 57 Ark. 195, 21 S.W. 33 (1893) held that a deputy sheriff, who was not also a deputy collector, could not conduct a valid tax sale. Contrary to the suggestion in the majority's opinion, in *Dermott* we recognized those cases and distinctly stated that the office of sheriff and the office of collector are two distinct offices. However, none of those cases dealt with the issue here which is whether the constitution mandates separate accounting for the expenses and fees of the two functions of the office of sheriff/collector. More on point is the holding in *State* v. *Landers*, 183 Ark. 1138, 40 S.W.2d 432 (1931) which is cited by the majority without discussion. The trial court in *Landers*, reasoning much like the majority here, held that since the offices of sheriff and collector are separate and distinct, the holder thereof was entitled to two salaries. However, we reversed and held that the officeholder was entitled to only one salary, thereby intimating that, in fiscal matters, the constitution does not mandate that the two offices be held distinct. As we said in *Dermott*, it is merely an extension of the same logic to say that the expenses may be treated as one office. The majority cites no authority for the proposition that the constitution mandates that the two functions be treated as separate and distinct offices for fiscal purposes.

The situation here and in *Dermott* is unlike that in *County Board of Education* v. *Austin*, 169 Ark. 436, 276 S.W. 2 (1925), and *Terry, County Judge* v. *Thornton*, 207 Ark. 1019, 183 S.W.2d 787 (1944). In those cases excess fees and commissions were paid into a general county fund. Here, there is no excess, because the expenses of the office of sheriff/collector for the year in question exceed the total fees and commissions collected by the two functions. Here,

unlike *Austin* and *Terry,* the same officer who is charged with the duty of collecting the taxes also has the right to charge commissions as provided by the legislature and apply those collections to the expenses of *his* office.

I agree with the majority that Act 123 of 1975 is unconstitutional. However, I disagree with that part of the opinion which overrules *Dermott.* Therefore, I would affirm the trial court in all respects.

ADKISSON, C.J., joins this dissent, except he would hold Act 123 constitutional.